## A. E. COZENS v. E. H. MIDDLETON.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued January 31, 1888—Decided February 13, 1888.

Prima facie, an accommodation indorsement is a loan of the indorser's credit without restriction ; but, when the permissible defence is made that the indorsement was for a restricted purpose and fraudulently diverted therefrom by the maker, the questions whether or not the indorsement was made as claimed and whether the note was transferred in payment of a pre-existing debt or as a collateral security therefor, are to be submitted to the jury with proper instructions.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ.; absent.

No. 424 January Term 1887, Sup. Ct.; court below, No. 190 October Term 1884, C. P.

On July 30, 1884, suit was brought by Edward H. Middleton, against A. Ervin Cozens, upon the following note :

$1,000.          JENKINTOWN, PA., April 22, 1884.

Three months after date I promise to pay to the order of
A. Ervin Cozens, One Thousand Dollars, at the Jenkintown
National Bank, Pa., without defalcation, value received.

Credit the drawer,

    A. ERVIN COZENS.          T. LLOYD FULMER.

[Indorsed by A. Ervin Cozens.]

At the trial on November 24, 1886, under the plea of non
assumpsit, when the plaintiff had rested upon proof of the
note, the defendant testified, in substance : That in January,
1884, T. Lloyd Fulmer, the maker of the paper, being in debt
to some extent, and about to incur other indebtedness, inter
alios, to E. P. Allis & Co., of Milwaukee, for machinery for
the introduction of the " Roller Process " into his mills at
Jenkintown, was endeavoring to place a mortgage for $10,000
upon his property, with the proceeds of which to pay off his
existing and prospective indebtedness ; that, fearing a me-
chanics' lien would be entered by Allis & Co., if he purchased
from them, which would interfere with the mortgage loan de-
sired, Fulmer had the defendant and others of his friends
indorse several of his notes which were to be turned over to
Allis & Co. to hold until the mortgage loan could be obtained,
and that such a note for $1,000, at three months, was made by
Fulmer, indorsed by the defendant for that purpose, and left
with Fulmer, on January 22, 1874 ; that in April following,
when this note was about to mature, Fulmer came to the de-
fendant, and, saying that his dealings with Allis & Co. had not
been consummated, surrendered the said note and had the
defendant indorse a second one, for the same amount and for
the same time, to be used for no other purpose than that for
which the other note was to be used, and that the note then
given was the note in suit : Further, that just before this sec-
ond note matured, the defendant discovered that a mortgage
loan had been obtained by Fulmer, that Allis & Co. were not
paid and had filed a mechanics' lien, and that Fulmer had
turned the note over to the plaintiff Middleton ; that in an
interview with the plaintiff the latter had admitted to the
defendant that when he received the note Fulmer had told
him for what purpose it was to be used when the defendant

indorsed it. In this testimony the defendant was fully corroborated by the testimony of Fulmer.

In rebuttal, the plaintiff denied that any information whatever had been given him as to the purpose of the note in suit when it was indorsed, or that he had made the admissions to the defendant as stated. Fulmer's credibility was affected by the testimony of Aaron I. Sanson, who testified that he was present at a conversation between Fulmer and Middleton before the bringing of the suit, when Fulmer, being told of the defence likely to be made against payment, said he had not informed the plaintiff when he transferred the note to him of the purpose for which it was intended and he would so testify. Other matters of defence set up appear in the charge of the court below and in the opinion.

The court, BOYER, P. J., charged the jury, in part, as follows:

In this case there are two defences set up, under which it is maintained that the note cannot be recovered upon against Mr. Cozens, owing to the agreement between him and Fulmer when it was given. One is because the plaintiff had knowledge of that circumstance. Another is that Mr. Middleton, the plaintiff in this suit, when he received this note, accepted it as a collateral security, and not in payment of his claim, and that therefore, in consideration of this note, he gave no actual value, and for that reason he took it subject to the equities existing between the original parties. If Mr. Middleton, when he received this note from Lloyd Fulmer, was told by Lloyd Fulmer, as he testifies, that this note was given only for the purpose of a settlement which was in contemplation between Fulmer and E. P. Allis & Co., and that he was to make no other use of it, then Mr. Middleton took it subject to the defence which is set up in this case, that it was to be returned to Cozens in case it was not used in the settlement between Fulmer and E. P. Allis & Co.; and in that case, if you believe that that agreement existed between Fulmer and Cozens when the note was given, that it should be used only for that purpose, and that was communicated to Middleton, there is an end of the plaintiff's case. He could not, under those circumstances, recover against the defendant in this action. But you

will scrutinize the testimony upon this point with careful consideration. You will inquire as to the credibility of Mr. Fulmer's testimony upon this point. You will bear in mind that if Fulmer testifies to the truth, he testifies that he committed a fraud as against Cozens. His object in passing the note off upon Middleton was to gain time, and to satisfy Middleton for the time, who was pursuing him upon his claim. Is it natural that Fulmer would have volunteered to tell Middleton a circumstance which would affect the validity of the note in his hands? Or, if Fulmer was ready, in fraud of Cozens, to make use of this note for a different purpose than that for which it was given, was it natural that he should be so scrupulous as to communicate to Mr. Middleton circumstances which were likely to induce Middleton not to accept the note? Middleton denies upon oath that he received from Fulmer any information of the kind. If you believe the testimony of Lloyd Fulmer, as I said before, there is an end to the plaintiff's case.

But if you reject the testimony of Fulmer in regard to the notice he alleges to have given to Middleton, the next question for your consideration will be, as to whether this note was received by Middleton in payment of his claim. If it was received by him in payment of his claim, and he did not know of the circumstances under which it was given, he is entitled to recover in this action. Now, what amounts to the payment of a claim? For we must take care not to be confused by the loose use of language. The payment of a claim is its extinguishment. Mr. Middleton testifies, that he took this note in payment of the first note which Fulmer had given him, and that he surrendered that note by mailing it to Fulmer. Fulmer does not recollect, as he testifies, whether he received it or not; and, taking the testimony of Mr. Middleton as it stands, this note, if you believe him, was accepted in payment of Mr. Fulmer's first note. But was that a payment of Mr. Middleton's claim? You will recollect that the debt was contracted upon a contract between Middleton and Fulmer, under which Middleton sold and delivered to Fulmer certain machinery. The payment was to be cash. The cash was not paid, and Fulmer gave a note to Middleton for $1,025, payable in fifteen days. It was not paid when it became due, but when Middleton went to claim the money, Fulmer said he had not

the money to pay the note, but he would give him this note in suit with the name of Cozens upon it, which, he said, made it as good as wheat. Middleton took the note. [Now the presumption of law is, in the absence of other evidence, that when a creditor under such circumstances receives a security, that he receives it as collateral to the antecedent debt; and therefore, unless evidence can be found in this case that Middleton agreed to take this note in satisfaction of his claim, it is but a collateral in his hands; and if it be a collateral in his hands, then, supposing it to have been given by Fulmer to Middleton in fraud of Cozens, in consequence of the special use for which it was given, then Cozens can defend against this action; provided he has shown to your satisfaction that the agreement as to the special use to which the note was to be restricted existed at the time the note was given between him and Fulmer.] [7] It would not be natural that Middleton should accept this note in full payment of his claim, because the original contract still existed, unless it was expressly given up; and Mr. Middleton had a right, and exercised it, to file a mechanics' lien for the whole amount. This note, therefore, under the circumstances, was but a substitute for the note which had previously been given. If Mr. Middleton had surrendered a valuable security in consideration of this note, the case might stand otherwise; but when he received this note he only gave up the note which had been previously given, and upon which Lloyd Fulmer's name stood alone. He received this note, upon which were the names of Mr. Fulmer and Mr. Cozens, and if there can be no recovery in this case, the note is still good as against Fulmer. Therefore, in this transaction, when Mr. Middleton accepted this note, he put himself in no worse position than before, even should he fail to recover in this action. For that reason I charge you that it is to be considered as a collateral to Mr. Middleton's claim upon the contract for the sale and delivery of the machinery.

[The vital question in this case, as I view it, is the question whether the contract which is alleged between Fulmer and Cozens when the note was given, really existed. If the contemplated settlement with E. P. Allis & Co. was simply the occasion of giving the note, and when the note was given its use was not restricted to that purpose alone, then Mr. Fulmer

Charge of Court below.

received the note primarily for that purpose, but without restriction as to its use for another. You must be satisfied that this alleged agreement was not an afterthought, and in the consideration of that question you will recall the testimony in relation to the conduct of the parties. It was the duty of Fulmer, according to that agreement, if it existed, to have returned the note to Cozens when the contemplated settlement with E. P. Allis & Co. failed. It was not returned. You will take into consideration what passed when Mr. Middleton called upon Mr. Cozens to arrange for the payment of that note. Upon this subject the testimony varies. Mr. Middleton swears that Mr. Cozens said that he had been at expense lately in erecting certain buildings, and that he was short of money, and gave that as an excuse for not paying anything upon the note. Mr. Cozens swears on the contrary, that he reminded Mr. Middleton of the circumstances under which the note was originally given, not by detailing the circumstances, but by making an allusion to the terms upon which the note had been given, and swears that Mr. Middleton replied that he knew of that fact. Upon this point it is important to consider when this knowledge came to Mr. Middleton, because if it came to him after his acceptance of the note, it would make no difference so far as the notice is concerned; but I call your attention to these circumstances in order that you may scrutinize, by the light of all the facts in the case, whether or not there was an original agreement when the note was given, restricting Fulmer to the use of the note solely for the purpose of settling with E. P. Allis & Co.][3]

The plaintiff has requested me to charge you upon certain points, which I will now proceed to do :

1. That if the jury should find that the plaintiff took the note in suit in payment of the previous $1,025 note, without notice of the defence now set up, he is entitled to recover the amount of the note with interest.

Answer : This is only true provided the plaintiff also accepted the note, not only in payment of the note for $1,025 previously given by Fulmer, but in absolute payment of so much of the original debt.

2. That the payment of the $1,025 note is to be presumed

as a payment, unless the evidence shows the contrary to be the fact.

Answer: We decline to affirm this point as stated. Although it may be presumed to have been a payment of the $1,025 note, the substitution of the new note is not to be presumed to have been an absolute payment on account of the debt, unless it is shown to have been so by the accompanying facts in evidence.

3. That under all the evidence in the case the plaintiff is entitled to recover the amount of the note with interest.

Answer: We decline to so instruct you. That must depend upon how you find the essential facts, and apply the law to them under the instructions of the court.

The defendant has also asked me to charge you upon certain points:

1. If the jury find that the note in suit was not accepted as payment of the debt then owed by Fulmer to Middleton, but merely as a collateral or additional security to cover such indebtedness, then the defendant in this action can set up any defence he might set up against Fulmer if he were suing on the note.

Answer: I cannot answer this point directly, because it assumes that Fulmer could sue Cozens upon the note, which would be impossible, because Fulmer is the maker of the note; but I will answer it according to what I conceive to be its intent. [It is true, as this point is intended to state, that unless Middleton became the possessor of the note in question by accepting it in payment of so much of the debt owing by Fulmer to Middleton, he took it subject to the equities existing between Fulmer and Cozens, and cannot recover, provided you find that the note was given to Fulmer by Cozens with the express understanding that it was to be used only in a transaction between Fulmer and E. P. Allis & Co.] [6]

2. If the jury find that the plaintiff took the note of Cozens of $1,000 without surrendering the $1,025 note, there was no consideration at that time for the $1,000 note of Cozens, and Middleton took it therefore subject to the equities between Cozens and Fulmer.

Answer: In the judgment of the court it makes no difference whether the note for $1,025 was surrendered at the time

the $1,000 note was delivered or not, unless the latter was accepted in payment and discharge of so much of the indebtedness of Fulmer to Middleton.   The presumption in either case, in the absence of other testimony, would be that it was received only as a conditional payment, or in other words, as additional security for the payment of the original debt; and, in such case, the note in suit would be subject to the equities between Cozens and Fulmer.

3. If the jury find, that in the mechanics' lien filed by the plaintiff, he gave no credit for the $1,025 note given by Fulmer for the machinery that went into the mill, the plaintiff cannot recover in this suit, as the record shows no payment of said $1,025 note by him.

Answer : The omission of the plaintiff to give credit for the note in the mechanics' lien filed afterwards, is evidence tending to show that the plaintiff did not consider the note as received by him in absolute payment on account of his claim, but only as such in case the note was paid.   But the court cannot charge that the omission to give such credit, is of itself conclusive against the plaintiff in this suit, which involves also other questions.

4. If the jury find that the defendant loaned the note in suit to Fulmer for the specific purpose to use it in settlement of E. P. Allis & Co.'s claim, and for no other purpose, then when that purpose failed it was dead in law, and belonged absolutely to the defendant, and any subsequent use by Fulmer of said note, without the knowledge and consent and concurrence of the defendant, was a fraud upon the rights of the defendant.

Answer : This is true, if the jury find that when the defendant gave the note to Fulmer it was expressly restricted to the settlement with E. P. Allis & Co.[1]

5. If the jury find that Fulmer used the note in suit in clear disregard of his promise to Cozens, and passed it to the plaintiff as security for a debt which he already owed the plaintiff, and told him to have it discounted and use the proceeds, and he would take it up when due, the plaintiff is not a bona fide purchaser for value, and he cannot recover from the defendant.

Answer : This is true, if the jury also find, as before stated,

that the note was not given to be used by Fulmer at his discretion, but solely for the purpose of settlement with E. P. Allis & Co. But if, after the settlement with E. P. Allis & Co. failed, the note was left in Fulmer's possession to be used by him for general purposes, the defendant would be bound.[2]

7. If the jury believe that Cozens loaned to Fulmer, about the time the note in suit became due, the two $500 notes in question, that raises no new consideration either express or implied, and leaves the defendant in the same position to make defence to the original note of $1,000, as if the $500 notes had not been given, and the jury should not find in favor of the plaintiff for the reason that said notes of $500 were given by said Cozens to Fulmer.

Answer: Certainly, the subsequent giving of the two $500 notes to Fulmer by Cozens, raises no new consideration upon the note in question; nor does it affect the defence, further than as evidence showing that Cozens sometimes loaned his notes to Fulmer for general purposes and allowed Fulmer to exercise his discretion in the use of them; and as those two $500 notes were offered for discount to take up the note in question, if this had been done with the knowledge and consent of Cozens, it might have a bearing upon the question as to whether it was consistent with the theory of the defence, that the $1,000 note was given by Cozens, as he and Fulmer testify, only for the particular purpose alleged. But Cozens denies that he knew that Fulmer had given Middleton the $500 notes for that purpose, and Fulmer denies it likewise. Fulmer, however, testifies that when he obtained the two $500 notes from Cozens, he told him he would get back his $1,000 note.

8. If the $1,000 note of Cozens was given to Fulmer after the $1,025 note was due, and if the $1,025 note was an antecedent debt, then the $1,000 note was not given for a present consideration, and the plaintiff cannot recover.

Answer: The $1,025 note was a promise to pay a debt antecedent to itself, and the substitution of the note in question, if not proved to have been made in payment and extinction of the original indebtedness, was but the giving of a new security and this without regard to whether the note first given was due or not.

Now, gentlemen, I have endeavored to make the principles of law involved in this case as clear to your minds as I could, and you will now apply them, and address yourselves to the facts in this case, which are exclusively for you.

The verdict of the jury was in favor of the plaintiff for $1,141.37. A rule for a new trial was subsequently discharged. The defendant then took this writ assigning for error:

1, 2. The answers to the defendant's points.[1][2]

3. The part of the charge embraced in [ ][3]

6. The part of the charge embraced in [ ][6]

7. The part of the charge embraced in [ ][7]

*Mr. N. H. Larzelere* and *Mr. Franklin March*, for the plaintiff in error:

1. Even if the plaintiff did not have notice that the note was to be used by Fulmer only for an express purpose, the transfer of it was a pledge of a negotiable security for an antecedent debt, not founded on a present valuable consideration, and was to be taken subject to the equities subsisting between the maker and indorser: Liggett Spring Co.'s App., 111 Pa. 291; Maynard v. Bank, 98 Pa. 250; Hunter v. Moul, 98 Pa. 13; Kirkpatrick v. Muirhead, 16 Pa. 117; Smith v. L. & B. Ass'n, 93 Pa. 19; Lenheim v. Wilmarding, 55 Pa. 73.

2. The note, having been indorsed for a special purpose, was controlled by the terms of the contract, and it was a fraud upon the defendant to use it in any other way: 1 Edwards, Bills, 320: Denniston v. Bacon, 10 Johns. 198; Kassen v. Smith, 8 Wend. 437. The note having been fraudulently diverted, payment can be enforced against the accommodation indorser only by a bona fide holder for value: Royer v. Keystone Bank, 4 W. N. 86; Sitgreaves v. F. & M. Bank, 49 Pa. 359; Phelan v. Moss, 67 Pa. 65; Carpenter v. N. B. of the Republic, 106 Pa. 170; Bardsley v. Delp, 88 Pa. 420.

*Mr. Charles Hunsicker*, for the defendant in error:

In the case at bar, there was no pretence of fraud, accident or mistake, to authorize the admission of parol evidence to qualify the effect of the note, under Phillips v. Meily, 106 Pa. 536; Hill v. Gaw, 4 Pa. 493: Anspach v. Bast, 52 Pa. 356; Hacker v. Oil Ref. Co., 73 Pa. 93; but, with such evidence of

the secret agreement set up and all the surroundings, the jury after a fair trial decided against the plaintiff.

OPINION, MR. JUSTICE STERRETT:

The note in suit after being indorsed by the payee, defendant below, was returned to the maker, who afterwards and before maturity transferred it to the plaintiff below for an antecedent debt, but whether in payment thereof or merely as collateral security was a disputed question.

In taking the note directly from the maker with the words "credit the drawer" written on the lower left corner, and signed by the payee, plaintiff below is presumed to have known it was an accommodation indorsement, and therefore without consideration as between the maker and payee; but that fact without more would be no defence: Appleton v. Donaldson, 3 Pa. 381; Lord v. Ocean Bank, 20 Pa. 384; Twining v. Hunt, 7 W. N. 223; Carpenter v. N. B. of the Republic, 106 Pa. 170, and cases there cited. The doctrine of these and other cases is, that an accommodation indorser of negotiable paper pledged by the maker for an antecedent debt cannot defend on the ground that his indorsement was without consideration, because that would defeat the purpose for which he loaned his credit; but he may successfully defend by proving to the satisfaction of the jury that his indorsement was fraudulently procured, or, that instead of being a general and unrestricted loan of credit, the indorsement was made for a specific purpose, and that without his knowledge or consent, the note was fraudulently used for another and entirely different purpose and the like; but as against a bona fide holder for value, without notice, no such defence is available. In Lord v. Ocean Bank, supra, which was the case of an accommodation maker, it is said: "He who chooses to put himself in the front of a negotiable instrument, for the benefit of his friend, must abide the consequence, and has no more right to complain if his friend accommodates himself by pledging it for an old debt than if he had used it any other way."

An accommodation indorsement is, prima facie, a loan of the indorser's credit without restriction, but it may be shown to have been otherwise understood by the parties. In this case defendant below denied that the indorsement in question was

an unrestricted loan of his credit, and undertook to prove by
his own testimony and that of the maker that the note was
indorsed for the specific purpose of being used by the latter in
the settlement of a certain claim, and for no other purpose
whatever; that after it ceased to be available for that purpose,
the maker wrongfully and without defendant's knowledge and
consent transferred it to plaintiff below as collateral security
for an antecedent debt, etc. In view of this evidence, the
court was requested to charge: "If the jury find that the de-
fendant loaned the note in suit to Fulmer for the specific pur-
pose to use it in settlement of E. P. Allis & Co.'s claim, and
for no other purpose, then when that purpose failed it was dead
in law and belonged absolutely to defendant, and any subse-
quent use by Fulmer of said note without the knowledge,
consent, and concurrence of the defendant, was a fraud upon the
rights of the defendant." The answer of the learned judge
was as follows: "This is true, if the jury find that when the
defendant gave the note to Fulmer it was expressly restricted
to the settlement with E. P. Allis & Co."

It is contended that this answer, with the exception of the
first three words, is erroneous; but we are unable to see where-
in it is so. It is a mistake to call it a qualification of the
affirmance or to claim that it was prejudicial to defendant below.
The legal conclusion, stated in the point, necessarily depended
on the facts the jury was asked to find, and it was certainly
not improper, in affirming the point, to call their attention to
the principal question of fact upon which it was necessary for
them to pass. That question, as well as others presented by
the evidence, was exclusively for their consideration and deter-
mination under all the evidence in the case, including the
rebutting testimony offered for the purpose of showing a differ-
ent state of facts. If the jury made a mistake in not finding
according to the weight of the evidence before them, the error
is one which we are powerless to correct. The only remedy
was an appeal to the discretionary power of the court to set
aside the verdict and order a new trial. The court refused to
exercise that discretion, presumably for the reason that, on all
the questions of fact involved in the case, the verdict was fully
warranted by the evidence. The first specification of error is
not sustained.

The second specification is not according to rule, but, waiving that, the answer to the point referred to was entirely proper.

What was said by the learned judge in those portions of his charge which constitute the third, sixth, and seventh specifications, respectively, was clearly warranted by the evidence. Special reference has already been made to the questions of fact upon which defendant below mainly relied, but there were others upon which it might become necessary for the jury to pass in making up their verdict. Those questions were all properly presented and fairly submitted to the jury.

The fourth and fifth specifications are not according to rule, and therefore not entitled to further notice. There appears to be no error in the record.

Judgment affirmed.