## BURNES *v.* SCOTT & Another, Executors.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

Argued March 23, 1886.—Decided April 5, 1886.

In a suit at law, by the payee of a promissory note or his representatives, against the maker, evidence is inadmissible to show that the note was not intended to be a promissory note, but was given as a memorandum not to be enforced against the maker.

A defence in an action at law by the payee of a promissory note, or his representatives, that there was a failure of consideration in that the note was based upon certain partnership transactions between the parties which are

still unsettled, and the amount due from the one to the other therefore unknown, is an equitable defence which cannot be set up in that action.

The making of a champertous, and therefore under the law of the State void and illegal, contract for the prosecution of a suit to collect a promissory note, cannot be set up in bar of a recovery on the note.

This was an action at law upon a promissory note. The case is stated in the opinion of the court.

*Mr. B. F. Stringfellow* for plaintiff in error.

*Mr. George W. DeCamp* for defendant in error.

MR. JUSTICE WOODS delivered the opinion of the court.

This was an action at law brought by Milton Courtright against James N. Burnes, the plaintiff in error, upon the note of the latter made at Chicago, and dated October 10, 1872, whereby he promised to pay, thirty days after date, to the order of F. H. Winston, $7333, at the Cook County National Bank, in Chicago. Courtright by indorsement and transfer became the owner and holder of the note.

The defendant pleaded four pleas. The first of these was a general denial of the averments of the petition.

The second plea was in substance as follows: That when the note was made, the plaintiff Courtright, the defendant Burnes, the said Winston, and one Campbell had been, and were, partners in a contract for building a certain railroad therein named; that prior to the date of the note Winston had received and was in possession, as part of the assets of the partnership, of forty bonds for $1000 each, of the city of Atchison, subject to the payment of the partnership debts, and, after such payment, for distribution among the partners; that a short time before the date of the note the partners had appointed the defendant a trustee to settle the partnership affairs; that when the note was given the partnership affairs had not been settled, and were not settled at the time of filing the plea; that at the time of the making of the note, Winston turned over to defendant the bonds above mentioned, and estimated that there would be due him, as a partner in the firm, from its assets, the sum men-

tioned in said note, and thereupon requested the defendant, as trustee of the partners, to make the note " with the understanding that the same was not to be sued on, but was to be deemed a mere memorandum of the amount that should be estimated as the share of said Winston, on account of said bonds, in a settlement among said partners; " that the defendant executed the note accordingly, as trustee of the partnership and not, as his individual note, and the plaintiff acquired title to the note with knowledge of these facts.

By the third plea it was averred as follows: That the note sued on " was and is wholly without consideration, and is null and void, and that said note is based upon and grew out of transactions relating to the business of said partners · that said partners are interested in the same, and are necessary parties to a suit relating to said note, and the amount due on said note, if any, cannot be ascertained until a final settlement of said partnership can be had."

The last plea was that the suit was prosecuted under an agreement between the plaintiff and George W. DeCamp, his attorney, whereby the latter undertook to prosecute the suit and to pay all the expenses incident to its prosecution, in consideration that he should receive four tenths of the amount recovered.

The parties waived a trial by jury and submitted the issues of fact as well as of law to the court, which made a general finding for the plaintiff and entered judgment thereon in his favor against the defendant Burnes for $11,401.60, who thereupon sued out this writ of error. After the record was filed in this court Courtright died, and the executors of his last will were made defendants in error in his stead.

The bill of exceptions shows that upon the trial of the case the defendant, to sustain the issue on his part, offered evidence tending to show that " Winston, the payee and assignor of the note sued on," Courtright, " the plaintiff," Burnes, " the defendant," and one Campbell, were the contractors for the construction of the Chicago and Southwestern Railroad, as partners, and that Winston was entitled to an interest of two fifteenths in such contract; that Winston had charge of the execution of

the contract and possession and control of the assets arising from the contract; that after the completion of the road, in October, 1872, Winston delivered to defendant forty bonds of the city of Atchison for one thousand dollars each, which had been received and, were then held by him as part of the assets under such contract; that the bonds were delivered by Winston to and received by defendant as the trustee for the parties in interest in the contract, and that at the time the bonds were so delivered defendant gave to Winston the note sued on."

The defendant also offered evidence to show " that the note sued on when given was not intended by him, the maker, nor by Winston, the payee, as a promissory note, but was only intended, and so given by him and received by Winston, as a memorandum of the then estimate of the value of the estimated interest of Winston in the Atchison bonds then delivered as part of the profits of the aforesaid contract for the construction of the Atchison Branch, to be accounted for on a settlement between the partners to such contract;" "that the only consideration of the note sued on was the transfer by Winston to defendant of the interest of Winston in the Atchison bonds, as part of the profits of the contract for the construction of the Atchison Branch;" and "that upon a settlement of the partnership accounts, between said Winston and his partners in the contract for the construction of said Atchison Branch, the said Winston would have had no interest in the profits of said contract, having received more than his share thereof prior to the giving of said note."

To all of which evidence so offered plaintiff objected as incompetent and irrelevant, and the objections were sustained by the court, and the evidence excluded. The exclusion of the testimony so offered is now assigned for error by the defendant.

So far as the evidence excluded was offered in support of the second plea, it is plain that it was inadmissible. Its purpose was to vary and contradict by an alleged contemporaneous verbal agreement the contract which the parties had reduced to writing. It was offered to show that a promissory note in the usual form was not intended by the parties to be a promissory note, but was a mere memorandum by which the maker prom-

ised nothing; which gave no rights to the payee, and was to all intents and purposes vain, futile, and of no force or effect whatever. It is not necessary to cite authority to show that the evidence was inadmissible for such a purpose.

The counsel for defendant not strenuously insisting that the evidence was admissible to support the second plea, insist that it was competent to prove the third. They argue that as want of consideration may be shown in defence of an action on a promissory note, the evidence should have been received.

As a general rule want of consideration is a defence to a promissory note, but it is not always a defence which can be made at law. It frequently requires the aid of a court of equity to give it effect. The plea, to support which the defendant contends the evidence of want of consideration was admissible, clearly sets up an equitable defence. It alleges that the note sued on is based on the "transactions relating to the business of said partners." Referring, therefore, to the preceding plea, which states the business of the partners, as we are authorized to do, we learn that the partnership business had not at the time of filing the pleas been settled, or the interest of Winston therein or he bonds been ascertained. The plea under consideration further avers that the members of the partnership were interested the said business and were necessary parties to a suit relating to the note, and that the amount due thereon, if anything, could not be ascertained until the final settlement of the partnership. It is plain, therefore, that the defence set up by the plea is not the legal defence of want of consideration, for the plea admits, by implication, that there may be something due on the note, but the equitable defence that the amount due on the note, if anything, is dependent on the amount coming to Winston from the assets of the partnership, which cannot be ascertained without a settlement of the partnership affairs in a suit to which all the partners are necessary parties. And yet having so pleaded, the defendant insists, in argument, that in a trial upon the promissory note in a court of law, and without the presence of two of the four partners, evidence is admissible to settle the partnership, and to prove, without making Winston a party to the suit, that there is noth-

ing due him out of the partnership assets. The pleading and the contention of the defendant appear, therefore, to be contradictory and inconsistent.

Plainly the relief, if any, to which the facts set up in this plea entitles the defendant is an injunction to stay the suit at law upon the note until a settlement of the partnership and an ascertainment of the amount, if anything, coming to Winston out of the assets of the partnership. This is a remedy which a court of equity only can grant. But the defendant insists on a verdict and judgment in his favor, without settlement of the partnership on which, as he asserts, the validity of the note depends.

Under the jurisprudence of the courts of the United States a court of law can no more take cognizance of an equitable defence than a court of equity can entertain a suit upon a purely legal title. "The Constitution of the United States," says Mr. Chief Justice Taney, in delivering judgment in the case of *Bennett* v. *Butterworth*, 11 How. 668, 675, "in creating and defining the judicial power of the general government establishes this distinction between law and equity, and a party who claims a legal title must proceed at law. . . . But if the claim is an equitable one he must proceed according to the rules which this court has prescribed regulating proceedings in equity in the courts of the United States."

So in *Thompson* v. *Railroad Companies*, 6 Wall. 134, the court referred to *Bennett* v. *Butterworth*, and cited with approval and adopted the following extract from the opinion in that case : " Although the forms of proceedings and practice in the State courts shall have been adopted in the Circuit Courts, yet the adoption of the State practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended in one suit."

So in the case of *Jones* v. *McMasters*, 20 How. 8, 22, which was an action at law for the recovery of the possession of land, it was held that when the grant from the government on which the plaintiffs relied was regular in form, it was not proper, by way of defence, to go behind the survey and location; that, "if they were voidable for irregularity or other cause, the ques-

tion was not one for a court of law in an action to recover possession, but for a court of equity to reform any error or mistake."

So in *Foster* v. *Mora*, 98 U. S. 425, 428, it was said that, " in actions of ejectment in the United States courts, the strict legal title prevails. If there are equities which would show the right to be in another, these can only be considered on the equity side of the Federal courts." To the same effect see *Greer* v. *Mezes*, 24 How. 268 ; *Watkins* v. *Holman*, 16 Pet. 25 ; *Bagnell* v. *Broderick*, 13 Pet. 436 ; *Bank of Hamilton* v. *Dudley*, 2 Pet. 492. See also Peeler's Law and Equity in U. S. Courts, ch. 1, and note 26, pp. 28, 29.

If the defence set up in the plea under consideration could be made effectual in an action at law, it would render obsolete in the equity courts of the United States that great head of equity jurisdiction under which injunctions are granted to stay proceedings at law. "The occasion," says Mr. Justice Story, " on which an injunction may be used to stay proceedings at law are almost infinite in their nature and circumstances." " Thus, an injunction is sometimes granted to stay trial, sometimes after verdict to stay judgment, sometimes after judgment to stay execution, and sometimes after execution to stay the money in the hands of the sheriff," &c. Story Eq. Jur. §§ 885, 886, and see §§ 881, 882; Eden on Injunctions, ch. 2, p. 3 ; *Waterlow* v. *Bacon*, L. R., 2 Eq. 514 ; *Hibbard* v. *Eastman*, 47 N. H. 507; *Hopkins* v. *Fletcher*, 47 Missouri, 331 ; *Tommey* v. *Ellis*, 41 Geo. 260.

It is clear, therefore, that the matters set up in the third plea were proper for the consideration of a court of equity, and that they could not be set up as a defence in a court of law. All the evidence offered to prove them was, therefore, properly excluded.

It further appears from the bill of exceptions that in support of the plea that the plaintiff had made a champertous agreement with his counsel for the prosecution of this suit, the defendant offered evidence which tended to prove a contract made by the plaintiff with his counsel, George W. DeCamp, by which the latter agreed to prosecute the suit and defray all the ex-

penses thereof, in consideration of which he was to receive a certain proportion of the sum recovered. The court, however, did not give effect to this plea, and overruled a motion made by the defendant to dismiss the action on the ground that the plaintiff had made such champertous contract. This action of the court the defendant assigns for error.

At common law and by statute, both in England and in many of the United States, champerty was a criminal offence. But at the present time, in most of the States, to aid the lawful suit of another with money or services in consideration of a share in the recovery, is not considered or punished as a crime. But in many of the States champertous contracts are considered void. This is the case in Missouri where the present case was tried, the Supreme Court so holding, on the ground that the common law had been adopted by statute in that State. See *Duke* v. *Harper*, 66 Missouri, 51. The defendant now asks us to go a long step beyond this ruling.

The question raised by the present assignment of error is not whether a champertous contract between counsel and client is void, but whether the making of such a contract can be set up in bar of a recovery on the cause of action to which the champertous contract relates.

We must answer this question in the negative. It was wisely said by the Supreme Court of New York, in the case of *Thalhimer* v. *Brinkerhoff*, 3 Cowen, 623, that "the right of litigation may be abused, and proper remedies for groundless and vexatious litigation must exist; but the remedies for the abuse of this right should be such as not to impair the free use of the right itself. As the justice or injustice of the claim cannot be known before the termination of the cause, the checks upon unjust litigation must in general consist, not in excluding the suit or the suitor from the courts, but in redress following the decision of justice upon the merits of the case."

This is in accord with the views of this court. The precise question under consideration was decided in the case of *Boone* v. *Chiles*, 10 Pet. 177. That was a bill in equity to establish the title to a tract of seven hundred acres of land in Bourbon County, in the State of Kentucky. Among other defences it

was alleged that an agreement in writing had been made between Boone, the plaintiff, and one Engles, by which Engles undertook at his own expense to prosecute a suit for the seven hundred acres in dispute, and, as a consideration for his trouble, was to have one-half of the land, and that the suit was prosecuted under that agreement; that it was, therefore, a case of champerty and maintenance forbidden by law, in which the court could give no relief. But the court held that, although the English statutes which had been adopted in Kentucky punished the offence and declared the contract for maintenance void between the parties, the right of the plaintiff was not forfeited by such an agreement, and it might be asserted against the defendants whether the contract with Engles was valid or void. The same rule has been declared in other American cases. *Whitney* v. *Kirtland*, 27 N. J. Eq. (12 C. E. Green), 333; *Robison* v. *Beall*, 26 Georgia, 17; *Allison* v. *Chicago & Northwestern Railroad Co.*, 42 Iowa, 274.

So in *Hilton* v. *Woods*, L. R. 4 Eq. 432, it was strenuously urged that the bargain between the plaintiff and Mr. Wright, under which the suit was instituted, amounted to champerty and maintenance, and consequently disqualified the plaintiff to sue, and that the court was bound to dismiss the bill. But the Vice Chancellor said: "I have carefully examined all the authorities which were referred to in support of this argument, and they clearly establish that whenever the right of the plaintiff in respect of which he sues is derived under a title founded on champerty or maintenance, his suit will on that account necessarily fail. But no authority was cited, nor have I met any, which goes the length of deciding that where a plaintiff has an original and good title to property he becomes disqualified to sue for it by having ventured into an improper bargain with his solicitor as to the mode of remunerating him for his professional services in the suit or otherwise." There was, therefore, a decree for the plaintiff, though without costs.

In *Elborough* v. *Ayres*, L. R. 10 Eq. 367, it was conceded that the fact that the plaintiff, in an action for malicious prosecution, had been maintained, would be no bar to the action, and the Vice-Chancellor held that such maintenance would be no

ground for the interference of a court of equity to prevent the action from going on, citing Vice-Chancellor Wigram in *Evans* v. *Prothero* [not reported on that point].

The only cases to which we have been referred in which the rule insisted on by the defendant has been maintained were two cases decided in the Supreme Court of Wisconsin. *Barker* v. *Barker*, 14 Wisc. 131, and *Allard* v. *Lamirande*, 29 Wisc. 502.

We think, therefore, that both upon reason and weight of authority, the court did not err in refusing to give effect to the fourth plea of the defendant, or in refusing to dismiss the suit because it was prosecuted under a champertous agreement between the plaintiff and his counsel.

*Judgment affirmed.*