CHICAGO TITLE & TRUST CO. et al. v. STATE BANK OF AMBIA.

(Circuit Court of Appeals, Seventh Circuit. August 12, 1902.)

No. 875.

1. BANKS—SALE OF STOCK FOR FAILURE TO PAY ASSESSMENTS—INDIANA STATUTE.

Under the statute of Indiana (4 Burns' Supp. 1897, § 13) which provides that when the state auditor determines that the stock of a state bank has become reduced, by impairment or otherwise, below the amount required by law, an assessment shall be levied on the stockholders, who shall be liable to an amount equal to the par value of their stock, and that on default in payment of such assessment for 60 days the stock shall be sold by the directors, the proceeds of such a sale, less the costs thereof, are the property of the stockholders, who may recover the same in an action at law as for money had and received; and the only requisite of a complaint in such an action, to establish a presumptive right of recovery, is that it shall show ownership of the stock in plaintiff; any lien of the bank or liability of the stockholder for unpaid stock, or otherwise, being matter of defense, or to be asserted in a suit in equity.

In Error to the Circuit Court of the United States for the District of Indiana.

The plaintiffs in error were the plaintiffs below in an action at law against the State Bank of Ambia, defendant below, to recover the proceeds of a sale made by the bank of 100 shares of its stock, held by the plaintiffs, and sold pursuant to a statute of Indiana providing therefor when the capital stock of a bank was found to be impaired, and an assessment to make good the deficiency was unpaid. Section 13, p. 242, 4 Burns' Supp. 1897 (Acts 1895, p. 202). The defendant demurred to an amended complaint filed by the plaintiffs in two paragraphs, assigning several grounds. The demurrer was sustained to each paragraph, as not stating a cause of action; and, judgment being entered against the plaintiffs, error is assigned upon such rulings.

In the original complaint it was alleged that the shares of stock so sold were owned by the plaintiffs, and were fully paid up, at $100 per share. Upon like demurrer, ruling, and judgment, the case came before this court on writ of error, and was reversed and remanded for further proceedings not inconsistent with the opinion. 30 C. C. A. 443, 86 Fed. 863, 59 U. S. App. 279.

After the cause was remanded the plaintiffs substituted for the original complaint the amended paragraphs in question, which state with unnecessary detail and prolixity the various proceedings and sources through which the plaintiffs claim title to the shares of stock, and further allege, in substance,

that the defendant bank was organized in 1891 under the laws of Indiana, with a capital stock of $25,000, divided into 250 shares, of $100 each; that on September 15, 1892, stock certificate No. 45, for the 100 shares in question, was issued by the bank to "William J. McConnell, trustee," in consideration "of the surrender to it of certain certificates" for like shares of its stock, "which stock had theretofore been subscribed for by" McConnell and "divers other persons, and said certificates issued therefor to said persons, and in consideration of corporation stocks and bonds, and other considerations unknown to the plaintiffs, received by the defendant, issued to William J. McConnell, trustee, under agreement with the United States Loan & Trust Company"; that said certificate No. 45, for 100 shares, was delivered and entered upon the books of the bank as issued for the receipt by the bank of "the sum of ten thousand dollars, the full face value of said shares of stock," and like entries appeared in reference to the original issues; that the plaintiffs' title, through the proceedings recited and by written assignment, was derived from the original holders and owners; and, in effect, that the defendant had knowledge of all the proceedings referred to, and recognized the title of the plaintiffs to the stock as full-paid stock, and gave plaintiffs notice of the assessment, and that the stock would be sold under the provisions of the statute if such assessment was not paid. Aside from these allegations tending to show not only issue of the shares purporting to be full-paid stock, and ownership by the plaintiffs as purchasers for value, but that such issue and ownership were constantly recognized on the part of the defendant, the cause of action is stated substantially as follows: The capital stock of the bank had become reduced by impairment, and in conformity with the statute the auditor of state, on August 1, 1896, "made an assessment of sixty per cent." against the stock to make good the impairment; and the defendant bank gave notice to the plaintiffs and other stockholders of the amount so assessed, and that the stock would be offered for sale if it was not paid within 60 days. On November 10, 1896, the plaintiffs having refused to pay the assessment, the auditor of state duly valued the stock at $40 per share, and directed sale thereof upon notice; and on January 2, 1897, the 100 shares were sold by the bank accordingly to Thomas McGuire for $40 per share, making $4,000, which was paid to the bank by said purchaser. Immediately thereupon the plaintiffs tendered to the bank the certificate for said shares, and demanded the said purchase money, "less all reasonable costs and expenses of said sale," but payment was refused, and the money is retained by the bank, although it has canceled the plaintiffs' certificate, and issued one to the purchaser in lieu thereof, and the assets of the bank, "exclusive of said four thousand dollars, were more than sufficient to pay and discharge all liabilities to the creditors" thereof.

The statutory provision referred to reads as follows:

"Sec. 13. The share-holders of each association formed under the provisions of this act shall be individually responsible to an amount over and above their stock, equal to the par value of their respective shares of stock, for all debts or liabilities of the association and which may be collected by suit and also as herein provided. Those holding shares only in a fiduciary capacity shall not be individually liable, but the assets of the estate, trust or person for whom they are acting shall be liable as herein provided. Whenever the auditor of state shall have reason to believe that the capital stock of any of said associations is reduced by impairment or otherwise, below the amount required by law or by its articles of association and certificate of increase or decrease of capital, as the case may be, the auditor shall require the deficiency to be made good and the board of directors shall immediately give notice of said requisition to each stockholder and of the amount of assessment which he must pay, by notice made to such stockholder at his place of business or served personally upon him. If any stockholder shall refuse or fail to pay the assessment specified in the notice within sixty (60) days from the date thereof, said directors shall have the right to sell said stock, or any part thereof, to the highest bidder at public or private auction, and with or without notice as the auditor may direct the sale to be made, but such stock shall not be sold for a less sum than valuation put thereon by the auditor and certified by him to the board of directors, and the auditor may revalue such

stock, and new offers for sale may be made at any time, and from the proceeds of sale shall first be deducted the costs thereof. If any association shall neglect for sixty (60) days after the auditor shall have required such deficiency to be made good to comply with such request, the auditor shall report the fact to the attorney-general, who shall at once institute such legal proceedings as shall be proper to wind up the defaulting association according to law, and in violation of law, or default named in this act shall be sufficient cause for the appointment of a receiver for any such association."

Smiley N. Chambers, Samuel O. Pickens, and Charles W. Moores, for plaintiffs in error.

Daniel Fraser (Will. H. Isham, of counsel), for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge (after stating the facts as above). The demurrer to the original complaint which was before this court on the previous writ of error raised the single question whether purchase money derived from a sale of bank stock under the provisions of the statute of Indiana above recited belongs to the bank or to the owner of the stock. Its solution depended upon the interpretation of that statute, which was thus given in the opinion by Showalter, Circuit Judge, speaking for the court:

"The directors are empowered to sell, provided the purchaser will pay as much as the value certified by the auditor, but it is nowhere stated that the price received by the directors shall go to and become the property of the bank. Presumably, the price, less the expense of the sale, would belong to the owner of the stock sold. In such case the bank would lose nothing. The purpose of the statute is apparently to enable the bank to get rid of unwilling stockholders and go on with its business. The extra obligation of shareholders for debts and liabilities of the corporation in default of assets is fully provided for in other portions of the statute. No obligation of that sort is involved here. The statute does not in terms, or by necessary implication, create an obligation on stockholders to pay more than the full par value of the shares, merely to replenish or replace capital lost in the business of the corporation."

No construction appears to have been placed upon the statute by the Supreme Court of the state, and that so given by this court is not open to question in the present case, and is decisive, as well, of a prima facie right of recovery on the state of facts alleged in the amended complaint. It was thereby established that the proceeds of a sale of stock under the statute were for the use of the stockholder, and not of the bank, and on such doctrine ownership of the stock so sold was the sole requisite of presumptive right to the purchase money, less the expense of sale. For recovery in that view, an action would lie as for money had and received, and thus the original complaint was sustained. While it was further alleged therein that the plaintiffs' stock was full-paid, the allegation was not material, for the reason that the property right in the proceeds of the statutory sale thus construed depended alone upon ownership of the stock. The amended complaint, however, ignores this rule, and tends to confuse the issue by allegations respecting the original issue of the bank stock, and of other considerations accepted therefor by the bank in lieu of cash, followed by allegations setting out the various transactions and legal proceedings through which the plaintiffs derive title

to the stock in controversy, and were recognized by the bank as purchasers and owners. Of these allegations, it is sufficient to remark that they are unnecessary and violate the rules of pleading at law, but nevertheless show presumptive ownership of the stock in the plaintiffs, and the complaint otherwise states a cause of action for recovery of the proceeds. If the pleading was so framed to anticipate a legal or equitable defense arising out of the original issue of the stock, and to obtain final adjudication on demurrer of any claim or lien for nonpayment, in whole or in part, it cannot have that effect, for the sufficient reason, if not otherwise objectionable, that the necessary facts do not appear to raise that issue, and it is a mere moot question. The allegations of the amended complaint respecting the sale of the stock are identical with the original allegations which were considered on the previous writ of error, and, the decision thereupon being conclusive that the sale under the statute operated to vest legal title to the proceeds in the owner of the stock, any equitable defense cannot be pleaded in the law action for their recovery in the federal court, and "can only be considered on the equity side of the court." Burnes v. Scott, 117 U. S. 582, 588, 6 Sup. Ct. 865, 29 L. Ed. 991, and cases cited. It does not appear that the original consideration for the stock was inadequate, nor that any claim or lien exists or is asserted for the statutory liability of stockholders for unpaid stock or otherwise; and no case appears of deficiency of assets of the bank to meet existing liabilities. Without facts on which to predicate a lien upon the stock or liability against the stockholders, no issue is raised in that behalf, and the inquiry is not presented whether a defense founded thereon is legal or equitable in its nature.

We are of the opinion that error is well assigned on the ruling below sustaining the demurrer, but are not to be understood as holding that an action will not lie to charge liability for a deficit against the proceeds of the sale if the 100 shares of stock were not fully paid up, even though the stock was at the time of the sale in the hands of third parties, having no knowledge of the pre-existing equities.

The judgment is reversed, and the cause remanded for further proceedings in conformity with the opinion.