EARLE v. ENOS.

(Circuit Court, E. D. Pennsylvania. May 13, 1904.)

No. 59.

1. ACCOMMODATION NOTE—DEFENSES.

The fact that a bank which discounted an accommodation note knew its character does not entitle the maker to set up the want of consideration as a defense thereto.

2. SAME—VARYING BY PAROL.

A parol agreement by a bank, made at the time of the delivery of an accommodation note and its discount by the bank, that it would not look to the maker for payment, but solely to the person for whose accommodation the note was given, and that it would apply thereon collaterals belonging to such person, cannot be shown to defeat an action on the note, its effect being to vary the written contract.

At Law. On motion for judgment for want of a sufficient affidavit of defense.

Asa W. Waters, for plaintiff.
A. S. Ashbridge, Jr., for defendant.

J. B. McPHERSON, District Judge. The affidavit of defense in this case is as follows:

"David G. Enos, being duly sworn according to law, deposeth and saith that he is the defendant in the above-entitled case, and as such has a just, true,

---

¶ 1. See Bills and Notes, vol. 7, Cent. Dig. §§ 165, 964.

full, and complete defense to the plaintiff's entire claim as contained in said statement, of the following nature, to wit:

"(1) The deponent admits that he signed the note upon which suit in this case was brought.

"(2) The deponent avers that at the time of the execution and delivery of the said note to the Chestnut Street National Bank, William M. Singerly was the president of the said bank, and was its chief executive officer; and the deponent further avers that he never received any consideration for the said note, and that he signed the said note as an accommodation to T. H. Bechtel, and for the accommodation of the said bank. The said note was delivered to the said William M. Singerly, president of the said bank, in the presence of the deponent, and the deponent then and there stated to the said William M. Singerly that he had not received and would not receive any consideration for the said note, to which the said William M. Singerly replied that he understood that, that it was for the benefit of Mr. Bechtel, and that it would be discounted by the bank and the money paid to the said Mr. Bechtel, and that the bank would not look to the said D. G. Enos for the payment of said note, or hold him liable thereon, but would look to Mr. T. H. Bechtel alone, and his collateral deposited with said bank, for payment thereof. Thereupon the deponent delivered the said note to the said William M. Singerly, and the said note was discounted by the said Chestnut Street National Bank, and the proceeds thereof were credited by the said Chestnut Street National Bank to the account of the said T. H. Bechtel, who was a depositor in said bank, and who had an account in the said bank at the time of its closing of its doors; and, in addition thereto, the deponent avers that the forty dollars paid on account of said note was paid by the said T. H. Bechtel, and not by the deponent.

"(3) The deponent specifically avers that he never received any consideration for this note, and that it was known by the said Chestnut Street National Bank, at the time it was discounted by them, that he had never received any consideration therefor, and the said Chestnut Street National Bank, through William M. Singerly, its president and chief executive officer, agreed to and with the deponent that it, the said bank, would not look to the deponent for the payment of the said note at maturity, or hold defendant liable therefor, but would only hold the said T. H. Bechtel, and his collateral deposited with said bank, liable therefor, and acknowledged that the said note was only delivered to the said bank as an accommodation for the said T. H. Bechtel and said bank; and upon this promise, and only upon this, the said note was delivered to the said bank.

"(4) At the time said note was delivered to said William M. Singerly there was in possession of said bank a certificate for 400 shares of the Black Lick Coal Company, 200 shares of which were pledged as collateral security for the payment of another note of $2,800 of said Bechtel, and the remainder of said collateral was not specifically pledged for the payment of any specific note, but was collateral security for payment of any indebtedness of said Bechtel to the payment of which the bank chose to apply the same. And it was these 200 shares of stock of Black Lick Coal Company which the said William M. Singerly promised and agreed to apply to the payment of the note in suit at its maturity. At the time the plaintiff took possession of the assets of this bank said 400 shares of said stock came into his possession as receiver, and was subsequently sold by him for the sum of $10 per share, and he received the sum of four thousand dollars therefor, of which two thousand dollars was received from the sale of the unapplied collateral, which the said William M. Singerly covenanted and agreed with the deponent to apply to the payment of the note in suit. And said promise so to apply said collateral was the inducement upon which said note was secured by said bank. The said note was therefore paid when plaintiff received said two thousand dollars from the sale of said collateral, and should have been delivered to the defendant.

"All of which facts are true, and the deponent expects to be able to prove the same upon the trial of this case."

In my opinion, this affidavit is insufficient to prevent judgment for the plaintiff. It sets up two defenses: First, that the defendant is an accommodation maker, and that the president of the bank knew

that fact from the beginning of the transaction; and, second, that when the note was made and discounted a collateral agreement was entered into, which provided that the note need not be paid according to its terms, but should be taken care of by the bank out of the proceeds of certain securities that had been pledged by the indorser. These defenses have been decided to be ineffectual, both by the courts of Pennsylvania and the courts of the United States. The first defense was considered by the Supreme Court of Pennsylvania in Lord v. Ocean Bank, 20 Pa. 384, 59 Am. Dec. 728, and was decided to be insufficient; the court saying:

"But the maker of an accommodation note cannot set up the want of consideration as a defense against it in the hands of a third person, though it be there as collateral security merely. He who chooses to put himself in the front of a negotiable instrument for the benefit of his friend must abide the consequence ([Walker v. Bank] 12 Serg. & R. 382), and has no more right to complain, if his friend accommodates himself by pledging it for an old debt, than if he had used it in any other way. This was decided ([Appleton v. Donaldson] 3 Pa. 381) in a case strongly resembling the present one. Accommodation paper is a loan of the maker's credit without restriction as to the manner of its use."

To the same effect is Penn Safe Deposit Co. v. Kennedy, 175 Pa. 164, 34 Atl. 660, where it is again declared:

"That an accommodation note is a loan of the credit of the maker to the payee, which he may use as freely and with the same effect as to the maker as he could use a note given for a full consideration. It is no defense for the maker of such a note, when sued by the indorsee, to aver the character of the note, or knowledge of its character by the indorsee."

The same rule prevails in the federal courts. In Israel v. Gale, 174 U. S. 395, 19 Sup. Ct. 769, 43 L. Ed. 1019, the Supreme Court said:

"As the discount of the note at the Elmira National Bank was not a diversion, but, on the contrary, was a mere fulfillment of the avowed object for which the note was asked, and to consummate which it was delivered, it becomes irrelevant to consider the various circumstances which it is asserted tended to impute knowledge to the bank of the purpose for which the note was made and delivered. If the agreement authorized the discount of the note, it is impossible to conceive that knowledge of the agreement could have caused the discount to be a diversion, and that the mere knowledge that paper has been drawn for accommodation does not prevent one who has taken it for value from recovering thereon is too elementary to require citation of authority."

See, also, note to Gillespie v. Campbell, 5 L. R. A. 698.

How far the second defense would be available in the courts of Pennsylvania is more difficult to decide. Parol evidence to vary or contradict a written instrument is admissible in this state in cases of fraud, accident, and mistake, and as these subjects call for the consideration of circumstances that continually vary, it is not always easy to apply with confidence the rule of one decision to another set of facts. But Phillips v. Meily, 106 Pa. 536, which has been often cited since with approval, seems to be much like the case in hand. Among the reported facts were these:

"Meily testified, in substance, that about April, 1874, Phillips came to him and told him that he held a note against the Union Forge Company, and wanted to pass it out of his hands for collection; that he had dealt largely with the company; that they had been kind to him, and that he did not wish to

distress them; that they were solvent, but that he wanted his money out of them; that because he was out of business they knew that he did not need his money, and that they would not pay him; and that he had thought of defendant as a proper person in whose hands to place the note, they knowing that he (defendant) was in business, and needed the money, and that they would pay him sooner than they would pay him (the plaintiff); that he then agreed to take note from plaintiff for collection, and asked the plaintiff to indorse it; that it occurred to him then that the plaintiff ought to have something to show for what he had received of him (plaintiff), and suggested to him that he would give him his note, payable April 1, 1875, with interest from maturity of the forge company note, so as to extend the time of payment of the note beyond the maturity of said forge company note, in order to give him time to collect it and pay it over to the plaintiff."

Of this testimony, the Supreme Court said:

"The defendant's testimony amounts to no more than that the note was not to be paid according to its terms, but only upon the contingency that he should be able to collect another note from the Union Forge Company. That such evidence is no defense was decided in Hill v. Gaw, 4 Pa. 493; Anspach v. Bast, 52 Pa. 356; Hacker v. National Oil Refining Co., 73 Pa. 93; Heist v. Hart, Id. 286."

But, whatever the validity of the second defense might be in the courts of Pennsylvania, I think it is clear that the more rigorous rule concerning the admissibility of parol evidence that prevails in the federal courts would not permit the admission of testimony there to establish the facts set up by the affidavit of defense. United States Bank v. Dunn, 31 U. S. 51, 8 L. Ed. 316, was closely similar in its facts to the present case. It was a suit against an indorser, who offered evidence to prove that when the note was made and indorsed the officers of the bank declared that he would incur no liability by his indorsement, as the payment was secured by a pledge of stock. Of this evidence the court said:

"The facts stated by the witness Carr are in direct contradiction to the obligations implied from the indorsement of the defendant. By his indorsement he promised to pay the note at maturity, if the drawer should fail to pay it. The only condition on which this promise was made was that a demand should be made of the drawer when the note should become due, and a notice given to the defendant of its dishonor. But the facts stated by the witness would tend to show that no such promise was made. Does not this contradict the instrument, and would not the precedent tend to shake, if not destroy, the credit of commercial paper? On this ground alone the exception would be fatal. But the most decisive objection to the evidence is that the agreement was not made with those persons who have power to bind the bank in such cases. It is not the duty of the cashier and president to make such contracts; nor have they the power to bind the bank, except in the discharge of their ordinary duties."

In Specht v. Howard, 83 U. S. 564, 21 L. Ed. 348, the court quoted with approval the following sentence from Parsons on Bills and Notes:

"It is a firmly settled principle that parol evidence of an oral agreement, alleged to have been made at the time of the drawing, making, or indorsing of a bill or note, cannot be permitted to vary, qualify, or contradict, or add to or subtract from, the absolute terms of the written contract."

In Brown v. Spofford, 95 U. S. 481, 24 L. Ed. 508, after referring to the foregoing cases, and to Forsyth v. Kimball, 91 U. S. 291, 23 L. Ed. 352, the court said:

"Parol evidence of an agreement made contemporaneously with a promissory note, which contains an absolute promise to pay at a specified time, is not admissible in order to extend the time for payment, or to provide for the payment out of any particular fund, or in any other way than that specified in the instrument, or to make the payment depend upon condition. Chitty, Contr. (10th Ed.) 99; Abrey v. Crux, Law Rep. 5 C. P. 41; Allen v. Furbish, 4 Gray, 514 [64 Am. Dec. 87]; 2 Pars. Bills and Notes, 501."

There are many other decisions in the federal courts to the same effect, but I think these are sufficient to show that the defense now under consideration could not be heard if the case were on trial in the Circuit Court. An elaborate discussion of the general subject of contemporaneous agreements and their breach as a defense to a promissory note may be found in 43 L. R. A., at page 449.

Judgment may be entered for the plaintiff for want of a sufficient affidavit of defense.