**BROMFIELD v. TRINIDAD NAT. INV. CO.
et al.**

Circuit Court of Appeals, Tenth Circuit.   December 9, 1929.

No. 114.

Horace Phelps, of Denver, Colo., for appellant.

Forrest C. Northcutt, of Denver, Colo. (Jesse G. Northcutt, of Denver Colo., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. The appellant sued the Trinidad National Investment Company on certain notes. The company admitted its liability thereon, but asked that there be set off a deposit of the Trinidad National Bank in the Drovers' National Bank, of which appellant is receiver; and for an accounting of certain securities pledged as collateral to the notes sued on. The cause was transferred to the equity side and the trial court, after hearing the evi-

dence, allowed the set-off. The controversy centers around the propriety of the set-off.

The facts are not in dispute. The investment company was formed by the Trinidad National Bank to afford customers of the bank increased facilities for borrowing money. The stockholders of the two institutions, and their officers, were substantially the same. They had the same place of business. Early in 1924, a Mr. Hardey was vice-president of the Drovers' National Bank, and a part of his business was to solicit accounts from other banks. He proposed to Mr. Cox, president of the investment company and of the Trinidad Bank, to enter into a three-cornered agreement to the effect that if the Trinidad Bank would open a deposit account with the Drovers' Bank, the latter bank would purchase notes of the investment company up to the amount of the deposit maintained, the Drovers' Bank to have the right to charge the notes of the investment company to the account of the Trinidad Bank. Mr. Cox, for the two Trinidad institutions, accepted the proposal. It was necessarily implied that the Drovers' Bank would pay the Trinidad Bank on demand the amount of the deposit in excess of loans made to the investment company. The correspondence and records show that the agreement was carried out in this way: The Trinidad Bank would forward notes of the investment company to the Drovers' Bank, generally collateralized by customer's notes; the Drovers' Bank would credit the Trinidad Bank with the face of the investment company notes, less the discount. Upon maturity of the notes, they would be charged to the deposit account of the Trinidad Bank. Some of the collateral deposited with the investment company notes was held by the Trinidad Bank under a trust receipt, as agent of the Drovers' Bank, to facilitate collections from the customers making the notes. Upon the failure of the Drovers' Bank, its receiver seeks to collect the investment company notes in full, and to relegate the Trinidad Bank to its participation with other depositors. The investment company, and the Trinidad Bank, want the receiver to apply the deposit of the Trinidad Bank on the notes, and offer to pay the balance. Hence the litigation.

The action of the trial court in applying the deposit of the Trinidad Bank on the notes of the investment company, and rendering judgment against the investment company for the balance, was right. It is right because that is the substance of what the Drovers' Bank agreed to do. The purpose of the arrangement was to avoid any real

extension of credit to either of the three parties to the agreement. The Drovers' Bank required that the deposit of the Trinidad Bank equal the notes of the investment company it carried, and exacted the right to charge them to that account. The Trinidad Bank made its deposit with the Drovers' Bank on condition that it carry investment company paper to approximately the amount of the deposit. It has been settled ever since the decision of Scott v. Armstrong in 1892, 146 U. S. 499, 12 S. Ct. 148, 36 L. Ed. 1059, that a receiver of a national bank, when suing the maker of a note to the bank, must set off the amount of the maker's deposit, without an express agreement. Without an express agreement, a receiver may not set off one man's deposit on another man's note. But here the Drovers' Bank solicited and procured a three-cornered agreement, the very basis of which was to avoid extensions of credit, and which treated the two Trinidad institutions as one for the purpose of this transaction. The agreement gave the Drovers' Bank the right to apply the Trinidad Bank's deposit to the investment company notes, and carried with it a reciprocal obligation to credit the notes with the deposit. It would be manifestly unfair to permit the Drovers' Bank to treat the two Trinidad institutions as one when it served the purposes of the Drovers' Bank, and permit it to treat them as separate corporations whenever its interest so indicated.

The errors assigned may be grouped. The appellant contends that the agreement is violative of the parol evidence rule. It is abundantly settled that parol evidence of an agreement that a note shall be paid out of a particular fund, or in any way other than specified in the instrument, cannot be received. United States Bank v. Dunn, 6 Pet. 51, 8 L. Ed. 316; Brown v. Spofford, 95 U. S. 474, 24 L. Ed. 508; Burnes v. Scott, 117 U. S. 582, 6 S. Ct. 865, 29 L. Ed. 991; Wagner v. Kohn (2 C. C. A.) 225 F. 718; Earle v. Enos (C. C.) 130 F. 467; Grand Valley Water Users' Ass'n v. Zumbrunn (8 C. C. A.) 272 F. 943, and a wilderness of other cases. But the investment company concedes its liability to pay these notes according to their terms. It seeks only to show the terms of the agreement pursuant to which the notes were given, and that the appellant has defaulted in its part of that agreement. The consideration for a note, or the lack of or failure thereof, or the terms of the agreement pursuant to which notes are given, may be shown by parol. Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; 22

C. J. 1164, and cases there cited. In Paine v. Central Vermont R. Co. (C. C.) 14 F. 269, 270, the maker of a note was permitted to show a parol agreement that the payment of an assessment should be applied on the note. The trial court said:

"The evidence by which these facts as to the assessments were proved was objected to, and it is argued that it was not admissible to affect the note, and that without it there would be no defense to the note. There is no question but that parol evidence is inadmissible to alter, contradict, or vary a written instrument, in an action upon the instrument as claimed by the plaintiff, but that rule is not applicable to this proof. This evidence did not vary the note nor its obligation. It recognized the note as a valid instrument according to its terms, but showed an obligation from the holder to an equal amount to be set off against the note. There is no fair question but that the evidence is admissible if the facts established by it would affect the note in the hands of the plaintiff."

This decision was affirmed by the Supreme Court of the United States. Id., 118 U. S. 152, 6 S. Ct. 1019, 30 L. Ed. 193. That court, at page 160 of 118 U. S., 6 S. Ct. 1023, held:

"The effect of the agreement between the defendant corporation and Hoyt was that the assessments to be laid upon his stock in the corporation should, when payable, be not only set off against, but considered as payments upon, the note for $5,000 from the corporation to him, now in suit. When Hoyt delivered this note to the plaintiff, on November 1, 1873, the assessments already due and payable upon his stock amounted to much more. As between the defendant and Hoyt, therefore, as well as against anyone who took this note from Hoyt, when overdue, the note had been paid. American Bank v. Jenness, 2 Metc. [Mass.] 288; Gilson v. Gilson, 16 Vt. 464."

Wigmore, in his work on Evidence (2d Ed.) § 2444, says:

"An extrinsic agreement as to the *mode of payment,* or the *amount* of payment, must be, by the foregoing test, ineffective, since the parties have expressly dealt with those matters in the instrument; and although an agreement to concede a *credit* or *counter claim,* as offsetting the obligation of the instrument, would be a separate transaction and therefore valid, yet the distinction between the two may sometimes be hard to draw."

■ Appellant claims that the set-off is not allowable because of lack of privity; that is to say, the investment company may not set off a deposit of a separate corporation, the Trinidad Bank. There are several answers. The three-cornered agreement supplies the element of privity, if it be essential. Again, by its contract and its conduct, the Drovers' Bank treated the two institutions as one, and it cannot now change its attitude. Furthermore, equity seeks for the substance. In Keyes v. First Nat. Bank (8 C. C. A.) 25 F.(2d) 684, the defendant bank had the personal notes of the president of the German Bank, the proceeds of which were credited to the German Bank, and the notes later paid by the German Bank. The receiver for the German Bank sued to recover the payment made by the German Bank to discharge the personal note of the president. Recovery was denied. The court, at page 687, said:

"The fact that the notes were signed by officers of the borrowing bank as individuals and not by the bank or endorsed by it does not preclude a showing, and consequent liability of the bank, that the bank in fact borrowed the money and received and used it for its own purposes."

In Hanover Nat. Bank v. First Nat. Bank (8 C. C. A.) 109 F. 421, the plaintiff, a New York bank, discounted a note signed by one Sheldon, president of the defendant bank, and paid the proceeds to the defendant bank. The defendant bank, not being on the note, when sued thereon, denied liability. The court decided (Sanborn and Thayer concurring) that the transaction should be explored, and if the debt were in fact that of the bank, it would have to pay it.

In Millett v. Omaha Nat. Bank, 30 F.(2d) 665, 666, the Court of Appeals of the Eighth Circuit confronted this situation: The appellee bank concededly owed a deposit to the Drovers' Bank of Denver. The appellee held the note of one Montgomery, a customer of the Drovers' Cattle Loan Company, a subsidiary of the Drovers' National. Montgomery paid the Drovers' Bank the amount of his note held by the Omaha Bank, but the Drovers' Bank did not remit. Sued for the deposit, the Omaha Bank claimed the right to set off Montgomery's claim against the Denver Bank. The receiver claimed his debt was to Montgomery, and set up the lack of privity. The set-off was allowed, the court holding that, quoting from Brewer v. Dyer, 7 Cush. (Mass.) 337, 340: "The law, operating on the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation, on which the action is founded."

■ Moreover, the doctrine of set-off is more flexible in equity than in law. In Blount v. Windley, 95 U. S. 173, the Supreme Court, at page 177, 24 L. Ed. 424, said:

"This remedy [of set-off] has been very much extended in equity where the insolvency of the judgment plaintiff, his non-residence within the jurisdiction of the court, the fact that the mutual obligations have grown out of the same transaction, and many other purely equitable considerations, have been held to authorize the setting off of many classes of obligations held by the defendant, against a judgment duly recovered against him in a court of law."

■ But considering the agreement as between the Drovers' Bank and the investment company alone, we find the investment company giving its notes to the Drovers' Bank, in consideration of the Drovers' Bank paying the proceeds to a third party, the Trinidad Bank. It seeks to recover on the notes, while declining to pay the proceeds to the third party. It is settled law that a consideration is valid, although it move to a third party. Restatement of the Law of Contracts, by the American Law Institute, § 75 (2); Williston on Contracts, vol. 1, § 113; Violett v. Patton, 5 Cranch, 142, 3 L. Ed. 61; 13 C. J. 325. This court held, in Weicker v. Bromfield, 34 F.(2d) 377, that a receiver of a national bank could not recover on notes, as long as his bank had failed to carry out an agreement made with the note-makers, to deliver certain securities to a third party. The decision in that case rules this case.

■ The appellant denies the authority of its vice-president, sent out to solicit accounts, to make this agreement. The evidence is to the contrary. Moreover, his acts were ratified by the subsequent conduct of the business, and by a resolution of the stockholders.

■ Appellant further complains of an order allowing the Trinidad Bank to intervene. Although the rights of the parties might perhaps have been worked out without the presence of the third party to the agreement, its presence could do no harm, and made a more comprehensive decree possible. Complaint is made that, through inadvertence, appellant did not reply to the intervener's answer. That answer closely followed the defendant's answer, to which there was a reply. Prejudice is claimed because the appellant had no opportunity to explore the matter of collections made by the Trin-

idad Bank on certain securities held by it for the Drovers' Bank. But these securities were collateral to the investment company's notes, and when the investment company's notes are paid, the collateral, and its proceeds, will belong to the investment company, and the appellant is not concerned with it. As we understand this record, when the deposit is credited on the notes, the balance due on the notes is $108.55, for which judgment was rendered against the investment company. When this judgment is paid, the plaintiff must return the collateral deposited by the investment company, and collections therefrom. The record is not clear as to how the sum of $108.55 was arrived at, but the trial court, in his memorandum, prescribed the proper formula for stating the account, and reserved jurisdiction to complete or adjust that accounting. No particular error is pointed out in the accounting; but if error there be, the trial court, under its reserved jurisdiction, can correct it.

The decree of the trial court is affirmed.