## SMYTH v. KLAUDER.
### No. 4562.

Circuit Court of Appeals, Third Circuit.
Aug. 27, 1931.

Russell Duane and Charles L. Smyth, both of Philadelphia, Pa., for appellant.

Sigmund H. Steinberg, Herman N. Silver, and Harry Fuiman, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a decree disallowing the claim of Flora E. Smyth filed with the trustee in bankruptcy of the estate of Michael A. Leibowitz, Benjamin Leibowitz, and Benjamin Cutler, trading as the Ideal Candy Company.

This case was here before, and we then decided that the landlord, Louis A. Shalet, whose building the bankrupts occupied, was entitled to priority for the amount, which was in dispute, of rent due him. We sent the case back for the determination of that amount.

The landlord, while litigation was going on, and some time before March 5, 1929, signified his willingness to compromise his claim for $600. On that date the trustee filed a petition with Referee Hoffman in bankruptcy for leave to compromise the claim.

On March 11, 1929, the landlord assigned the claim to Flora E. Shultz, the maiden name of Flora E. Smyth, appellant, for $600, which was paid by her out of a bank account kept in her maiden name, and executed a power of attorney to Charles L. Smyth, Esq., her husband, to prosecute the claim to final result. It does not appear that this was known to the trustee or referee, for on the 15th of that month, Referee Amram, to whom the case had been referred after the death of Referee Hoffman, sent out notices to creditors of a meeting to be held on March 26, 1929, to consider the petition to compromise the claim.

The landlord died on September 18, 1929, intestate. Five days later, September 23, this court handed down its decree holding that the rent claim was entitled to priority. In compliance with that decree, the District Court entered a decree directing the referee to determine the amount of the rent and pay it prior to costs of administration.

Pursuant thereto, the referee determined the amount of the rent to be $853.26, but

went further and found the claim to be champertous and against public policy, and so disallowed it. The District Court affirmed the order of the referee, and the case is here on appeal.

██ It is suggested by appellant that the referee had no jurisdiction to consider anything other than the determination of the amount of the rent and award it priority over administrative costs. In general a trial court is bound by the decree of the appellate court as the law of the case and must carry it into execution, according to the mandate. It cannot be varied or examined by the trial court except for the purpose of execution. In re Sanford Fork & Tool Co., 160 U. S. 247, 255, 16 S. Ct. 291, 40 L. Ed. 414. But assuming, without deciding, that the referee had jurisdiction to determine not only the amount of the rent claim and award it priority in payment, but also its allowability, does the assignment of it to the appellant constitute champerty and defeat it?

Upon the merits of the case, it makes no difference whether Mrs. Smyth is a bona fide assignee in her own right or whether she holds the claim for her husband. He doubtless negotiated the assignment, and we shall treat her as his "alter ego," for it was he who prosecuted this claim for two or three years and established its right to priority. But for its status as a prior claim, it would have been worthless, for, as we understand it, the administrative expenses would have consumed the fund. He had not been paid a fee for prosecuting the claim during these years.

The referee said: "Louis A. Shalet, the landlord, represented by Charles L. Smyth, unsuccessfully conducted litigation to establish his claim for priority of payment of his rent claim. After two years and three successive defeats, he decided that he had enough of litigation. He was sick, bed-ridden and afflicted with disease and he was in need of money." For some reason he discharged Mr. Smyth as his attorney. At this time and under these circumstances, he let it be known that he was willing to sell or compromise his claim for $600. It came to the knowledge of the trustee and also to Mr. Smyth. Both endeavored to secure the claim—the trustee by compromise, and Mr. Smyth by assignment. Both were negotiating with the landlord at the same time, but, before the trustee could effect a compromise, he made the assignment to Mrs. Smyth. If the trustee had succeeded, whether or not Mr. Smyth would have been paid, without a lawsuit, for his services in prosecuting the claim for two

or three years and in fact creating the fund, is questionable. He said that he would not have been. But be that as it may, the record does not disclose a single unjust thing which he did or a single misrepresentation which he made in obtaining this assignment or in prosecuting it. When the assignment was made, the claim was before this court. It was not then known what the disposition of it would be. Considering the risk which the assignee ran and the work which her husband had done and might have to do in prosecuting this claim, the amount paid for it was not only adequate and just, but very liberal.

Was the assignment under the circumstances champertous and against public policy?

██ Professor Williston says that "champerty is a bargain to divide the proceeds of a litigation between the plaintiff and the party supporting the litigation." Volume 3, Williston on Contracts, § 1711. It is not confined to attorneys, but generally such contracts are made between attorney and client. Mr. Justice Gray speaking for the Supreme Court in the case of Peck v. Heurich, 167 U. S. 624, 630, 17 S. Ct. 927, 929, 42 L. Ed. 302, said: "But according to the common law, as generally recognized in the United States, wherever it has not been modified by statute, and certainly as prevailing in the District of Columbia, an agreement by an attorney at law to prosecute at his own expense a suit to recover land in which he personally has and claims no title or interest, present or contingent, in consideration of receiving a certain proportion of what he may recover, is contrary to public policy, unlawful, and void, as tending to stir up baseless litigation." In England and a few of the states of this country, any contract by an attorney to take as his compensation a share of the proceeds of litigation as such is illegal. In most states, however, the common-law doctrine of champerty and maintenance has never been adopted, or, if adopted, has been substantially modified by statute. It has never been adopted in the states comprising this circuit, New Jersey, Pennsylvania, and Delaware, and in those states it is not champertous for an attorney to agree with his client to render services for a contingent fee. Schomp v. Schenck, 40 N. J. Law, 195, 29 Am. Rep. 219; Hassell v. Van Houten, 39 N. J. Eq. 105; Perry v. Dicken, 105 Pa. 83, 89, 51 Am. Rep. 181; Williams v. Philadelphia, 208 Pa. 282, 288, 57 A. 578; Bayard v. McLane, 3 Har. (Del.) 139, 159.

The same rule prevails in the United States courts in jurisdictions where such contracts are not champertous, illegal, and void. Stanton v. Embrey, 93 U. S. 548, 23 L. Ed. 983; Taylor v. Bemiss, 110 U. S. 42, 45, 3 S. Ct. 441, 28 L. Ed. 64; Burnes v. Scott, 117 U. S. 582, 589, 6 S. Ct. 865, 29 L. Ed. 991. In the case of Perry v. Dicken, supra, Mr. Justice Clark of the Supreme Court of Pennsylvania, quoting from Judge Lewis' Abridgement of the Criminal Law with regard to contingent fees said: "Many of the most eminent and upright gentlemen of the bar have felt no repugnance to this method of compensation; it has been practiced without the slightest censure by gentlemen who have risen to the highest legislative and judicial stations in the Commonwealth, and who have been distinguished ornaments of the profession."

As above stated, Mr. Smyth was not the attorney of the landlord when he assigned the claim, which can in no way be considered champertous except on the theory that the assignment prevented a compromise and so stirred up and kept alive litigation. But practically the same could be said about every contract by a lawyer involving a contingent fee. This was a just claim for which Mr. Smyth had fought for more than two years. He was not guilty of any fraud, deceit, or misrepresentation. The price paid was adequate. He believed in the righteousness and legality of the battle which he had waged, and was willing to risk his money to vindicate his legal judgment and protect his fees. In states in which the purchase by an attorney of claims with intent to sue thereon, is prohibited by statute, which in effect adopts the common law rule, it is permissible to purchase the claim if suit has already been instituted and is pending when the purchase is made. Wetmore v. Hegeman, 88 N. Y. 69; Browning v. Marvin, 100 N. Y. 144, 2 N. E. 635. In states in which the common-law doctrine of champerty and maintenance has not been adopted, there is nothing contrary to law, morals, or public policy for an attorney to enter into a contract with his client for an interest in what is recovered by the litigation, even though he agrees to pay the costs and expenses of the suit. Hassell v. Van Houten, 39 N. J. Eq. 105; Brown v. Bigne, 21 Or. 260, 28 P. 11, 14 L. R. A. 745, 28 Am. St. Rep. 752; Bentinck v. Franklin, 38 Tex. 458. One who has an interest in the subject-matter of a suit, as Mr. Smyth did by reason of his fees, and purchases the interest of the plaintiff pending suit, and thereafter prosecutes the suit himself, is not guilty of champerty or maintenance. Ross v. City of Fort Wayne (C. C. A.) 64 F. 1006.

When the facts of this case are considered, we are of the opinion that the conduct of Mr. Smyth in bringing about this assignment was not champertous or against public policy.

The decree of the District Court is reversed, with directions to allow the claim.

Reversed.