**VITAPHONE CORPORATION et al. v. HUTCHINSON AMUSEMENT CO. et al.**

No. 4108.

District Court, D. Massachusetts.

May 3, 1937.

Hill, Barlow & Homans, Arthur D. Hill, and Faneuil Adams, all of Boston, Mass., for plaintiffs.

Withington, Cross, Proctor & Park and Edward C. Park, all of Boston, Mass., for defendants.

360

SWEENEY, District Judge.

In this suit the plaintiffs seek statutory damages for copyright infringement, attorney's fees, and an injunction against the defendants.

Statements of fact herein are intended as findings of fact, and statements of legal conclusions, as rulings of law, under the Equity Rule 70½ (28 U.S.C.A. following section 723).

The Vitaphone Corporation is a citizen of the State of New York, and is engaged in the production and distribution of motion pictures, and is the sole owner of the copyrighted motion pictures termed "Broadway Brevities," which includes about twenty separate pictures. The plaintiff Vitagraph, Inc., is a citizen of the State of New York, and is engaged in the business of distributing, exhibiting, and licensing, under copyright, motion pictures. The Vitaphone Corporation granted to Vitagraph, Inc., the exclusive right to distribute, exhibit, give, and license performances or exhibitions of the pictures with which we are concerned.

The defendants Casco Amusement Corporation and Hutchinson Amusement Company are corporations engaged in the business of exhibiting motion pictures. The defendant E. M. Loew's Theatres, Inc., is a holding company and engages in supervising the activities of a large group of theatres. It owns a majority of the stock of the Casco Amusement Corporation. In this case it operated as the booking agent for the Casco Amusement Corporation. The defendant E. M. Loew is the president and treasurer of all of the defendant corporations, and is a director of each, and holds the majority of the outstanding stock of E. M. Loew's Theatres, Inc., and the Hutchinson Amusement Company. The Hutchinson Amusement Company operates the New Portland Theatre at Portland, Me., and the Casco Amusement Corporation operates the Casco Theatre in the same city. They have a common resident manager.

The infringements complained of occurred by reason of the unauthorized exhibition in the New Portland Theatre of eight of the copyrighted "Broadway Brevities" owned by the plaintiffs.

E. M. Loew's Theatres, Inc., was granted a license by the plaintiffs to exhibit the eight pictures involved at the Casco Theatre in Portland, Me., on certain days mentioned in the contract. In addition to showing these pictures at the Casco Theatre, they were, in the trade parlance, "bicycled" to the New Portland Theatre, and exhibited there without license from the plaintiffs. From the evidence, I am satisfied that each of the eight copyrighted motion pictures was shown at least once at the New Portland Theatre without authority.

The defendants in their answers denied infringement, denied that the pictures were within the copyright law (17 U.S.C.A. §§ 1, 25), and set up a defense of barratry. Whether the defense of barratry would be a bar to this action is not decided. No cases were cited in support of that contention. See Burnes v. Scott, 117 U.S. 582, 6 S.Ct. 865, 29 L.Ed. 991, where it was held that a champertous contract could not be set up in bar of a recovery on the cause of action to which it related. The facts proven would not warrant a finding of barratry.

The plaintiffs, with several other producers, combined to form a distinct organization known as the Copyright Protection Bureau, for the purpose of combatting the evils such as herein presented, by instruction, education, investigation, and suit in the name of, and for the benefit of the producer whose copyright was infringed. After producers have gone to the expense of producing motion pictures, their only source of revenue is from licensing copies of their films for exhibition on days and dates determined by them. Obviously, exhibitions of their films which do not produce revenue operate to defeat the purposes for which the pictures are made. In forming an organization such as the Copyright Protection Bureau, which they maintain with their own funds, they are taking a legitimate step to protect their business of producing and renting their products. While they underwrite the annual budget of the Protection Bureau, their individual contributions are decreased to the extent of any recovery that may be made for their benefit against persons who are liable under the statute. The proceeds of any action brought by the Bureau go into its general fund to the credit of the producer affected. That each producer may have bound himself not to interfere once an action for violation of copyright has been commenced does not to my mind constitute the Protection Bureau a barrator. On all the evidence, I find that the Copyright Protection Bureau did not operate in a barratrous manner as set up in the defendants' answers.

The defendants contend that these motion pictures are not within the copyright law (17 U.S.C.A. § 1 et seq.). I do not think there is much merit to this contention. All

of the pictures are what are known in the trade as "shorts"; that is, they run for periods from ten to twenty minutes, and are used as fill-ins between the feature pictures, news reels, and other pictures on the program. The subjects are comedy, and while they are of the "slapstick" type, they, nevertheless, have a story to them. In Metro-Goldwyn-Mayer Distributing Corporation v. Bijou Theatre Company (D.C.) 3 F.Supp. 66, 73, it was held that "motion picture photoplay films are either dramatic works entitled to protection under subdivision (d) of section 1" of the copyright act "or they are nondramatic works entitled to protection under subdivision (b)."

In Tiffany Productions, Inc., v. Dewing (D.C.) 50 F.(2d) 911, 914, the court stated: "assuming, without deciding, that the exhibition here complained of was neither a 'publication' nor a 'copy' within the meaning of section 1(a) of the act, there would seem to be no escape from the conclusion that the plaintiffs are nevertheless entitled to invoke the protection of section 1(d) on the ground that a 'motion-picture photo-play' is a 'dramatic work.' They are both cognate forms of production."

In the instant case, the reduction of the story such as it is to a motion picture is a dramatization of its work. I, therefore, find and rule that the copyrighted pictures in question are within the meaning and terms of the copyright law.

The Hutchinson Amusement Company exhibited at the New Portland Theatre on the dates specified the following motion pictures which were copyrighted by the plaintiffs:

| | |
|---|---|
| Seasoned Greetings | May 28, 1934 |
| Plane Crazy | May 30, 1934 |
| The Operator's Opera | June 26, 1934 |
| 'Tis Spring | July 18, 1934 |
| Yeast is Yeast | July 23, 1934 |
| The Mild West | Aug. 9, 1934 |
| Girl Trouble | Aug. 21, 1934 |
| Around the Clock | Sept. 4, 1934 |

While the Casco and New Portland Theatres were both run by the same manager, I cannot find from the evidence that the Casco Amusement Corporation ever authorized, or consented to the diversion of these pictures to the New Portland Theatre, or even had knowledge of such diversion, except through the person of the local manager. He could not be said to be acting in the interests of the Casco Amusement Corporation, or in its behalf, when he diverted the pictures to the New Portland Theatre. While access to the pictures was obtained by reason of his connection with the Casco Amusement Corporation, I find that he was at the time operating on behalf of the Hutchinson Amusement Company. The exhibition of these pictures in the New Portland Theatre was an infringement of the plaintiffs' copyright. I therefore find and rule that the Hutchinson Amusement Company is liable to the plaintiffs for eight infringements, and assess damages in the amount of $250 for each infringement. As to the other defendants, I am unable to find from the evidence that the diversion or "bicycling" of these eight pictures was with their knowledge, consent, or under their direction. I therefore find and rule that the bill as to these defendants may be dismissed.

Because there is little likelihood of a repetition by the Hutchinson Amusement Company of the infringement of these copyrights, it is not felt that an injunction should issue. This does not, however, divest this court of its equity jurisdiction. Metro-Goldwyn-Mayer Distributing Corporation v. Bijou Theatre Co. (D.C.) 50 F.(2d) 908.

The plaintiffs are entitled to recover from the Hutchinson Amusement Company the sum of $1,000 as a reasonable attorney's fee, and their full costs in addition to the $2,000 previously assessed.

A decree may be prepared in accordance with the above.