## Anspach *versus* Bast.

1. Bast sued Anspach on a note at six months; in his affidavits of defence, Anspach averred that he had bought a colliery from Bast, to pay thirty cents a ton for coal mined until all the purchase-money was paid, Anspach to work the mine "diligently and constantly;" that he gave the note in settlement of the purchase-money with an agreement that it was to be renewed, if enough coal had not been got out under the agreement to pay it at maturity, &c. *Held*, that the affidavits, if otherwise sufficient, were insufficient for not averring that the mines had been "diligently and constantly worked."

2. Parol evidence of an agreement when the note was made, that it should be renewed at maturity, would contradict the written contract of the parties, and was therefore inadmissible.

ERROR to the District Court of *Philadelphia*.

This was an action of *assumpsit*, commenced June 30th 1865, by Emanuel Bast against John Anspach, Jr., on a promissory note dated December 22d 1864, from Anspach to Bast, payable in six months, for $5150. Anspach, in his affidavits of defence, averred that the note in suit, with others, was given in settlement of the purchase-money of a lease of coal-mines, &c., upon an agreement dated December 12th 1864, that he was to pay, monthly, thirty cents per ton for every ton of coal mined, until the purchase-money, which was to be fixed by referees, should be paid—the colliery to be *diligently and constantly worked* by Anspach—and if the whole purchase-money and interest be not thus paid in three years, the balance to be paid in cash; that after the price was determined, Bast importuned him to give him notes for the payment, which he at first refused, lest he might not get enough coal out to meet their payment; but that, for the convenience of Bast, he gave this note, " with the express and positive agreement, that if he was unable to pay when the note matured, the term was to be extended by the renewal of the note for six months more;" that when the note was given, it was the intention of the parties that the money should not be exacted to a greater extent than would become due under the agreement; that he had not taken from the mines coal sufficient to pay the note before maturity; "that on or about the 1st of May last there was a great stagnation in the coal business, and a general stoppage of coal operations in the region where the mines are located, and no coal has been shipped from these mines since then."

[Anspach v. Bast.]

Judgment was entered January 6th 1866, for want of a sufficient affidavit of defence, which was the error assigned.

*A. V. Parsons*, for plaintiff in error, cited Byles on Bills 93 ; Clement *v.* Reppard, 3 Harris 111 ; Paterson *v.* Todd, 6 Id. 426 ; Hill *v.* Ely, 5 S. & R. 363 ; Bank *v.* Fordyce, 9 Barr 275 ; Mussleman *v.* Stoner, 7 Casey 265 ; Barnhart *v.* Riddle, 5 Id. 92 ; Barnet *v.* Offerman, 7 Watts 133 ; Parke *v.* Chadwick, 8 W. & S. 98 ; Renshaw *v.* Gans, 7 Barr 119 ; Carman *v.* Ins. Co., 6 W. & S. 155 ; Shaw *v.* Badger, 12 S. & R. 275 ; Morgan *v.* The Bank, 8 Id. 73 ; Nickle *v.* Baldwin, 4 W. & S. 290 ; Pety *v.* Christy, 19 Johns. 53 ; Denniston *v.* Bacon, 10 Id. 198 ; Frisbie *v.* Huffnagle, 11 Id. 50.

*J. W. Paul*, for defendant in error, cited Hill *v.* Gaw, 4 Barr 493 ; House *v.* Graham, 3 Camp. 56 ; Free *v.* Hawkins, 8 Taunt. 92 ; Moseley *v.* Hanford, 10 B. & C. 729 ; Stroup *v.* Ransom, 10 Watts 297 ; Mason *v.* Graff, 11 Casey 448.

The opinion of the court was delivered, May 1866, by

STRONG, J.—The affidavits of defence set forth nothing that could avail the defendant at a trial, even were it admissible to show by parol evidence, that the parties had agreed to a conditional change of the promise contained in the note. They affirm that it was agreed, if the defendant should be unable to pay the amount of the note at its maturity, that he should have the time extended six months, and that this agreement for an extension was based upon the original contract for the purchase and sale of a colliery, that the payment of the purchase-money was to be made from the coal mined as therein stated, and that it was not intended to alter or accelerate the time of payment. By that contract (incorporated into the affidavit) the defendant was bound to pay for each ton of coal mined from the premises sold to him the sum of thirty cents monthly, until the purchase-money was fully paid. He also covenanted in it that the colliery should be diligently and constantly worked by him. It was not enough, therefore, that he did not obtain coal. Assuming that he might have entitled himself to a renewal of his note, it was essential to such a right that he should diligently and constantly work the colliery, and that notwithstanding such work, he should fail to take out a sufficient quantity of coal to pay the sum stipulated at the rate of thirty cents per ton.

He was not at liberty to suffer the mines to be idle, much less to cease mining and yet claim an extension of time for payment, because he had not taken out the coal which would have been mined had he performed his covenant. But the affidavits make

[Anspach *v.* Bast.]

no averment that the colliery was diligently and constantly worked.   They affirm only that the defendant had not taken from the mines coal sufficient to pay the note before it matured, and that some time before its maturity, there was a great stagnation in the coal business, and a general stoppage of coal operations in the region where the mines are located, and that no coal had been shipped from the mines after that time.   It is manifest that an inability to pay the note out of coal mined, arising from the defendant's neglect to mine, was not a defence according to his own showing.   The promissee was not to run the risk of business stagnation.   The defendant had unconditionally agreed to work the colliery with diligence and constancy.   From this agreement he was not released by the fact that he could not mine profitably or that he could not sell coal, or that he did not send it away from the mines.   According to his own averments, it was not inability to make profit or to carry on business successfully, but inability to take out sufficient coal with diligent and constant work, that entitled him to delay or an extension of the time of payment ; yet such an inability he has not averred.   The affidavits, therefore, fail to exhibit any defence to the plaintiff's claim.

It is also decisive against the defendant that he relies on a parol agreement made contemporaneously with the note, that it should not mature absolutely in six months according to its terms.   Were he permitted to go to trial, it would not be competent for him to give parol evidence of such an agreement.   It contradicts the written contract of the parties.   No doubt in a suit between the original parties to a promissory note, parol evidence may be given to show what the consideration of the note was, or that the consideration had failed.   Such evidence does not contradict or vary the instrument.   But no case goes to the length of ruling that such evidence is admissible to change the promise itself, without proof or even allegation of fraud or mistake.   The contrary has been repeatedly decided.   In Hoare *et al. v.* Graham, 3 Camp. 56, it was ruled that in an action on a promissory note, or bill of exchange, the defendant cannot give in evidence a parol agreement entered into when it was drawn, that it should be renewed, and payment should not be demanded when it became due.   The doctrine of this case was repeated in Moseley *v.* Hanford, 10 B. & C. 729 ; in Woodbridge *v.* Spinner, 3 B. & A. 233, and in Free *v.* Hawkins, 8 Taunton 92.   Such also is the ruling of our own courts.   Hill *v.* Gaw, 4 Barr 493, was a suit by the payee of a check against the drawer, in which it was held that evidence of a parol agreement made at the time of the execution of the check, that payment was not to be demanded at maturity, but that time was to be given at the election of the drawer, could not be received.   The court said they could not perceive any difference in this respect between a

check, a promissory note and a bill of exchange. And this rule of exclusion is not peculiar to mercantile contracts: Fleming v. Gilbert, 3 Johns. 528 ; Keating v. Price, 1 Johns. Cases 22 ; see also Fulton v. Hood, 10 Casey 365. It was also ruled in Mason v. Graff, 11 Casey 448, that the acceptor of a bill of exchange is not to be permitted to vary the terms of his acceptance by parol evidence. The authorities against the position of the defendant are too numerous and direct to be disregarded, and the reasons upon which they are founded are controlling.

Judgment affirmed.