## GRANGE TRUST CO. OF HUNTINGDON, PA., v. AMERICAN SURETY CO. OF NEW YORK.

District Court, M. D. Pennsylvania. July 18, 1928.

### No. 2040.

James S. Woods, of Huntingdon, Pa., for plaintiff.

John T. Olmsted, of Harrisburg, Pa., and John D. Dorris, of Huntingdon, Pa., for defendant.

JOHNSON, District Judge. We have here for disposition the defendant's affidavit of defense raising questions of law.

This is an action of assumpsit brought by the Grange Trust Company of Huntingdon, Pa., against the American Surety Company of New York upon a bankers' blanket forgery and alteration policy of insurance. On the 15th day of January, 1926, the American Surety Company of New York issued to the plaintiff, the Grange Trust Company of Huntingdon, Pa., its bankers' blanket forgery and alteration policy of insurance, in which it insured and indemnified the plaintiff for one year against direct loss to the amount of $5,000 which it might sustain through the payment by said plaintiff, inter alia, of any check, certified check, or draft drawn upon the insured bank, or any promissory note which should be raised or altered in any respect, or upon which the signature of any indorser should be forged.

The third, fourth, and fifth paragraphs of plaintiff's statement, which are relevant to the questions of law involved here, are as follows:

"Third. On the 15th day of June, 1926, the defendant corporation issued to the plaintiff what was known as its bankers' blanket forgery and alteration policy, No. F. B. B. 470268B, wherein and whereby it insured, and agreed to indemnify for one year from the 15th day of June, 1926, the said plaintiff against direct loss, not exceeding the sum of five thousand ($5,000) dollars which may be sustained through the payment by the said plaintiff, after the date hereof, inter alia, of any check, certified check or draft drawn upon the insured bank, or of any promissory note, or domestic trade acceptance or bank acceptance payable at the insured bank, or of any certificate of deposit issued, or of any bank acceptance made, by the insured bank, which shall have been raised or altered in any respect, or upon which the signature of any indorser shall have been forged, and also against loss which may be sustained through other payments by the insured bank, a copy of which policy is hereto attached, marked 'Exhibit A,' and made part hereof."

"Fourth. On or about the 12th day of May, 1927, while said policy was in full force and effect, the said plaintiff received from one Leon G. Myers a certain note, dated the 12th day of May, 1927, for $3,700, payable in 10 days, and purporting to be signed by Leon G. Myers and indorsed by J. L. Westbrook, as bail or indorser, for the said Leon G. Myers, and the said plaintiff on that date, then and there, purchased or discounted said note, a copy of which note is hereto attached, marked 'Exhibit B,' and made part hereof."

"Fifth. On the 22d day of May, 1927, the said Grange Trust Company paid the full amount of said note, to wit, the sum of $3,700, and lost said amount on account of the forgery set forth in the sixth paragraph of this statement, the said Leon G. Myers being financially worthless."

Following is a copy of the note in question, which is attached to plaintiff's statement and made a part thereof.

"$3700. Huntingdon, Pa., May 12, 1927.

"10 days after date I, we or either of us promise to pay to the order of the Grange Trust Co. thirty-seven hundred and 00/100 dollars at the Grange Trust Company, Huntingdon, Pa., without defalcation, value received. And further do hereby empower any attorney of any court of record within the United States or elsewhere to appear for —— and after one or more declarations filed, confess judgment against me, or either of us, as of any term for the above sum with costs of suit and attorney's commission of five per cent., for collection and release of all

arrears, and without stay of execution and inquisition and extension upon any levy on real estate is hereby waived, and condemnation agreed to and the exemption of personal property from levy and sale on any execution thereon, is also expressly waived and no benefit of exemption be claimed under and by virtue of any exemption law now in force or which may hereafter be passed.

"Leon G. Myers    [Seal.]
"J. L. Westbrook    [Seal.]"

The policy of insurance in question is attached to plaintiff's statement, marked "Exhibit A" and made a part thereof. Following are the relevant parts in the policy of insurance:

"A—Of any check, certified check or draft drawn upon the insured bank, or of any promissory note or domestic trade acceptance or bank acceptance payable at the insured bank, and upon which there shall have been forged as the drawer, maker or acceptor thereof, the signature of a depositor or that of any person whose signatures such depositor has instructed the insured bank to recognize; and/or

"B—Of any check, certified check or draft drawn upon the insured bank, or of any promissory note, or domestic trade acceptance or bank acceptance payable at the insured bank, or of any certificate of deposit issued, or of any bank acceptance made, by the insured bank, which shall have been raised or altered in any respect, or upon which the signature of any indorser shall have been forged; and/or

"C—Of any certificate of deposit purporting to have been issued by the insured bank, or of any bank acceptance purporting to have been made by the insured bank, upon which there shall have been forged the signature of any person duly authorized to sign certificates of deposit or to make acceptances for the insured bank, and/or through the payment by any bank, after the date hereof.

"D—Of any check or draft drawn by the insured bank upon itself or any other depository within the United States, which shall have been raised or altered in any respect, or upon which the signature of any indorser shall have been forged, or of any check or draft purporting to have been so drawn by the insured bank upon which there shall have been forged the signature of any person duly authorized to sign checks and drafts for the insured bank, and/or through the cashing, by the insured bank, after the date hereof, or through the extension, by the insured bank, after the date hereof, of credit upon the faith.

"E—Of any check or draft drawn upon any bank, which shall bear the forged signature of any depositor of the insured bank as indorser."

The serious question of law raised in the affidavit of defense is whether the name of J. L. Westbrook appearing on the note in question as a joint maker must be considered, under the contract of insurance and pleadings in this case, as a maker or as an indorser.

Paragraph B of the policy of insurance, on which the plaintiff relies for recovery in this case, insured the plaintiff bank against a forged indorsement on any promissory note. On the face of the note in question, which is made a part of the plaintiff's statement, the forged signature clearly appears as the signature of a joint maker. The signature appears below the name of Leon G. Myers, the maker of the note in question, and at the place provided for the makers of the note. The language of the note, "I, we, or either of us, promise to pay," is the language of makers and not of indorsers. In fact, on the face of the note, the name of J. L. Westbrook appears as a maker, and cannot be held, under any consideration, as an indorser under either the common or legal understanding of the term "indorser."

The plaintiff contends that one may become an indorser of a note by signing his name on the face of the instrument, as well as on the back of the instrument, where by such signing the intention and understanding of the parties are that the signing is to be an indorsement and not the making of the note.

There may be cases in which, between the parties, the signature on the face of the instrument and at the place provided for the makers may be held an indorsement, but in such cases it must be shown that it was the intention of all parties that the signing on the face of the instrument and at the place provided for the makers was intended as an indorsement.

The plaintiff's statement contains no allegations showing that there was such an understanding, and furthermore such understanding between Myers and the bank could not affect the defendant insurance company.

Under the contract of insurance in paragraph B relied on by the plaintiff in this case, the defendant insurance company insured the plaintiff against a forged indorsement, and is only liable for a forged indorsement, and the court cannot read anything into this policy which would vary the plain terms thereof, and the name of J. L. Westbrook appears unequivocally and unconditionally as the name of a maker, and not as

the name of an indorser, and it is only against the forged indorsement which paragraph B of the insurance policy insures the plaintiff bank.

There are a number of acts against which the policy of insurance in question insures the plaintiff bank; each act is specifically mentioned and described. If the contract of insurance intended to cover the name of a forged maker, who was understood to be an accommodation maker, the contract of insurance would have provided for such condition, as it did plainly provide for a number of conditions. The court cannot interpret paragraph B in the policy of insurance to cover the forgery of the name of a maker, or accommodation maker, if such term may be used, so as to hold the defendant company liable for the amount of this note, which the plaintiff bank lost by the discounting of the note.

█ The court cannot sustain the contention of the plaintiff that the name of J. L. Westbrook on the note is a forged indorsement, unless parol evidence is admissible between the bank and the insurance company to vary the plain language of the note. Such evidence is not admissible; this position is supported by the authorities.

In Anspach v. Bast, 52 Pa. 356, Bast sued Anspach on a note due in six months. Anspach pleaded that he gave the note, subject to an agreement that, if he was unable to pay when the note matured, the term was to be extended by a renewal of the note for another six months. Judgment was entered for want of a sufficient affidavit of defense, which was affirmed by the Supreme Court; Mr. Justice Strong saying: "It is also decisive against the defendant that he relies on a parol agreement, made contemporaneously with the note, that it should not mature absolutely in six months according to its terms. Were he permitted to go to trial, it would not be competent for him to give parol evidence of such an agreement. It contradicts the written contract of the parties."

In Ziegler v. McFarland et al., 147 Pa. 607, 23 A. 1045, assumpsit was brought on a promissory note. The defendants in their affidavit attempted to show that, when they signed the note, they did not understand it to be an obligation to pay a definite sum of money, but to furnish a satisfactory horse in the place of the one which the plaintiff had brought back. Mr. Justice Mitchell, in affirming judgment for want of a sufficient affidavit said: "It is sufficient to say that it is a flat contradiction of the terms of a plain business writing, which any one competent

to do business at all could not fail to understand."

In Patton v. Fox, 22 Pa. Super. Ct. 416, action was brought upon a promissory note. The affidavit of defense, claiming that, at the time the note was executed, it was agreed by the plaintiff that the note should be renewed for a period of three months from the date of maturity, was held to be insufficient. On appeal, Judge Orlady, delivering the opinion of the court, said: "The affidavit of defense contradicts the express terms of the note, and relates to facts which must have been known by the maker prior to the date of the note. It is not suggested that fraud, accident, or mistake affected its execution. A contemporaneous agreement, in order to avail the maker of a note, must not only be the basis of its execution, but it must be explicitly set forth as the moving cause to induce the execution of the written contract, and the circumstances must be such that the enforcement of the contract would be a fraud on the maker."

In First National Bank of Pittsburgh v. Brasch, 16 Pa. Dist. R. 992, suit was brought on a note payable to the order of Perley & Bro., signed by the defendant, indorsed by the payees and discounted by the plaintiff bank. The defendant filed an affidavit of defense in which he alleged that he was known by the bank to be an accommodation maker of the note, and that, by an agreement at the time the note was given, the bank was to look to Perley & Bro. for payment. The court held that the affidavit was insufficient, saying: "Is the arrangement said to have been made between the indorsers and the plaintiff of any avail? It is not asserted that the defendant was to be relieved from liability by reason of this agreement. This, of itself, would be a sufficient answer. But, in addition, if it was made at the time the note was made and discounted, it is of no effect, for, by the sealed instrument, which is the final outcome and result of the bargaining of the parties. Wodock v. Robinson, 148 Pa. 503 [24 A. 73]. Unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms can neither be added to or subtracted from by parol evidence."

Section 17 of the Negotiable Instruments Act of Pennsylvania (Pa. St. 1920, § 16004) provided—

"Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser.

"Where an instrument containing the words 'I promise to pay' is signed by two or

more persons they are deemed to be jointly and severally liable thereon."

The court is satisfied that parol evidence cannot be offered in this case to change the plain meaning and terms of the written note, which was accepted by the bank, the plaintiff in this case, so as to charge the defendant insurance company in paragraph B of its policy. The court, therefore, is obliged to grant the motion contained in the defendant's affidavit of defense, and to enter judgment for the defendant.